UNITED STATES of America, Plaintiff–Appellee,

v.

Henry J. CENTRACCHIO and Thomas E. Guth, Defendants–Appellants.

Nos. 91–1742, 91–1750.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1992.

Decided Oct. 2, 1992.

Barry R. Elden, Ross O. Silverman, Asst. U.S. Attys. (argued), Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee in No. 91–1742.

Kathleen T. Zellner, Daniel F. DeLay (argued), Zellner & Associates, Naperville, Ill., for defendants-appellants in No. 91–1742.

Luis F. Sanchez, Kenneth J. Lowrie, Ross O. Silverman, Asst. U.S. Attys., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee in No. 91–1750.

George C. Pontikes, Pontikes & Associates, Sheldon Nagelberg (argued), Chicago, Ill., for defendants-appellants in No. 91–1750.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Defendants Henry Centracchio and Thomas Guth directly appeal sentences entered against them after a jury found Centracchio and Guth guilty of membership in a narcotics conspiracy and possession with intent to distribute ten kilograms of cocaine. The jury also found Centracchio guilty on other counts of the indictment, but those counts are not relevant to this appeal. The district judge sentenced both men under the United States Sentencing Guidelines. Centracchio was sentenced to concurrent terms of 120 months imprisonment on each count of conviction. Guth was sentenced to concurrent terms of 189 months of incarceration for each count of conviction. Both Centracchio's and Guth's prison sentences are to be followed by five years of supervised release. We affirm the sentences entered against Centracchio, but we remand Guth's sentence on Count Two of the superseding indictment, charging possession of ten kilograms of cocaine with intent to distribute, for a determination of whether Guth's conduct continued beyond the effective date of the Guidelines, November 1, 1987.

*Background Facts*

In 1983 Thomas Guth was serving a prison sentence at Sandstone Correctional Facility. While he was there he met another inmate, Gary Lewellyn. In October 1986 Guth was released, but he maintained regular contact with Lewellyn by phone. Meantime, Lewellyn was transferred to a federal prison camp at Maxwell Air Force Base in Montgomery, Alabama. Lewellyn was transferred after testifying as a government witness with regard to a murder of a fellow inmate at Sandstone. In February 1985 Lewellyn began to work for the government as a confidential informant.

Guth visited Lewellyn at Maxwell in late June of 1987. Guth told Lewellyn he had developed a narcotics operation in Chicago. Guth also said that a man named Henry Centracchio was involved in the operation and would be able to distribute large quantities of cocaine provided that the quality and price were right. Guth then asked Lewellyn if he knew anyone who could supply Guth's operation with large quantities of cocaine for distribution in Chicago.

Shortly after Guth's visit, José Martinez, one of Lewellyn's fellow inmates, told Lewellyn that he would be interested in acting as Guth's supplier once he was released from Maxwell. Lewellyn then arranged a meeting between Guth and Martinez at Maxwell during the summer of 1987. After the meeting, Martinez told Lewellyn that he and Guth had discussed the price and quantity of cocaine that Martinez could supply to Guth after Martinez's release from Maxwell.

Martinez was released to a halfway house in Miami, Florida, in August of 1987. Martinez remained in contact with Guth and Lewellyn, and the three men discussed possible drug transactions. On August 29, 1987, Guth met with Martinez and Robert Valido in Miami. At the meeting, Martinez told Guth to purchase an El Camino with Illinois plates. Martinez testified that all of the men threw in suggestions concerning the cocaine transaction and that Valido indicated he knew how to have a secret compartment installed in an El Camino. The cocaine was to be placed in the compartment in Florida and then the car would be driven to Guth in Chicago.

Guth had trouble locating an El Camino quickly. He was in a hurry to obtain cocaine because he promised to sell some to several buyers. Martinez convinced Jorge Silva, another former Maxwell inmate, to supply Guth with seven kilograms of cocaine. Silva arranged for the seven kilograms to be delivered to Guth in September of 1987. About this same time Guth found and purchased an El Camino and sent it to Florida. The car needed many repairs before it could be driven to Chicago loaded with cocaine.

Guth was very slow in paying Martinez for the seven kilograms he received from Silva. Guth told Martinez the reason for the delay was that the cocaine was of poor quality. To appease Martinez and make him more willing to send more cocaine to Chicago, Guth told Martinez that Henry Centracchio would be in charge of the finances and distribution of any future shipments of cocaine.

On October 10, 1987, Martinez called Lewellyn and told him the El Camino had been repaired and it would be leaving Miami for Chicago with ten kilograms of cocaine secreted in the car by Valido. The ten kilograms of cocaine had been "fronted" to Valido by some of his personal sources. Martinez's family driver, Daniel Gallegos, drove the El Camino loaded with cocaine to Guth in Chicago. Gallegos was not told there was cocaine in the car for security reasons. Guth called Martinez to tell him the El Camino had arrived with the cocaine. Guth also told Martinez he would pay $14,000 per kilogram for the cocaine.

On October 20, 1987, Martinez called Lewellyn and told him that he had not yet received any payments from Guth for the cocaine shipped to Guth on October 10. At this point relations between Martinez and Guth had deteriorated so much that Lewellyn began to act as an intermediary between them. Guth also provided Lewellyn with Centracchio's phone number and explained that Centracchio had been brought in to salvage the operation. Guth told Lewellyn that he had given two or three kilograms of cocaine to Centracchio for him to sell. Finally, Guth told Lewellyn that he would be able to pay Valido's sources $100,000 soon.

Around October 30, 1987, Lewellyn called Centracchio. Centracchio told Lewellyn that Guth had completely mismanaged the operation from a financial standpoint by giving cocaine to people to whom he owed personal debts rather than collecting money for the cocaine. Centracchio also told Lewellyn that he had multiple "units" (kilograms of cocaine) that he would do his best to sell.

Guth eventually paid $100,000 to Valido's sources. This amount represented part of what was owed for the ten kilograms shipped to Guth in the El Camino. Guth still owed Valido's sources $40,000, but he did not pay. As a result, Martinez and Valido were forced to turn over their personal cars to Valido's sources in order to settle Guth's debt.

In late November or early December of 1987, Centracchio travelled in Guth's El Camino to Florida, and he met with Martinez. Centracchio tried to persuade Martinez to give him more cocaine to sell so that Guth's debts could be settled. Martinez refused to supply Centracchio with any more cocaine, and Centracchio returned to Chicago.

Lewellyn was released from Maxwell on January 4, 1988. He flew to Chicago, and Centracchio and Guth met him at the airport. At a coffee shop near the airport, Centracchio told Lewellyn that Martinez and Valido were unhappy with the way the operation had been run in Chicago. Centracchio also told Lewellyn he did not think Martinez and Valido would do any further business unless Lewellyn interceded in their behalf. During 1988 Lewellyn had further conversations with Guth and Centracchio regarding obtaining and selling large quantities of cocaine. Many of these conversations were taped by the government. The tapes were played for the jury at trial and introduced into evidence.

On April 15, 1988, Lewellyn asked Centracchio if he could obtain a half kilogram of cocaine for an alleged friend of Lewellyn's in Des Moines, Iowa. Centracchio obtained the cocaine from James Aquilla and sold it to Lewellyn for $9,000 on May 10, 1988. Centracchio testified that he did not receive any money from the sale. On October 17, 1988, Lewellyn again asked Centracchio to provide him with another half kilogram of cocaine for Lewellyn's supposed friend in Des Moines, Iowa. Centracchio sold to Lewellyn a half kilogram of cocaine for $10,000 on January 25, 1989. Centracchio again obtained the cocaine from Aquilla, and Centracchio also testified that he received no money from the transaction.

*Sentencing*

At sentencing, the district court considered extensive arguments by the government and the defendants regarding the cumulative weight of the cocaine charged for purposes of determining sentence under the Sentencing Guidelines. There was also argument on whether the Guidelines applied at all to Guth's conduct charged in Count Two of the indictment, but the district court never made a specific finding as to whether Guth's criminal conduct continued beyond the effective date of the Guidelines, November 1, 1987.

The district court found that the government established by a preponderance of the evidence that the cocaine secreted in the El Camino ("El Camino transaction") involved more than four kilograms but less than five kilograms. The El Camino transaction was the subject of Count Two of the indictment, charging possession with intent to distribute ten kilograms of cocaine. The district court then aggregated this amount with the two half kilogram sales conducted between Lewellyn and Centracchio. These two sales were the subjects of Counts Seven and Fifteen of the superseding indictment, substantive narcotics distribution counts on which Centracchio, but not Guth, was found guilty. The district court concluded that the total amount of cocaine for which Centracchio and Guth were responsible for purposes of the Sentencing Guidelines was more than five kilograms but less than six kilograms.

Based on the quantity of cocaine distributed over the course of the conspiracy, which extended beyond the effective date of the Guidelines, the district court determined Guth's base offense level was 32, his criminal offense category was IV, and his applicable Guideline range 168 to 210 months. The court sentenced Guth to concurrent terms of 189 months on each count of conviction. The district court granted Centracchio a two-level reduction for acceptance of responsibility. His resulting base offense level was 30. The court then found Centracchio's criminal history category to

be II and his applicable Guideline range to be 108 to 135 months. Centracchio received sentences of 120 months imprisonment on each count of conviction to be served concurrently. Centracchio's sentence was the statutorily required mandatory minimum sentence.

*Analysis*

 Defendants Centracchio and Guth raise sentencing issues on appeal. Both were sentenced under the Sentencing Guidelines. We will uphold sentences imposed under the Sentencing Guidelines, assuming the Guidelines apply to the conduct in the case, if the Guidelines are applied to factual conclusions that are not clearly erroneous. *United States v. Buggs*, 904 F.2d 1070, 1078 (7th Cir.1990). The district court's determination of the quantity of drugs involved in an offense for sentencing purposes is a factual determination subject to the clearly erroneous standard. *Id.*

 Centracchio and Guth maintain the district court incorrectly concluded that the El Camino transaction involved four to five kilograms. The defendants contend the district court's conclusion is not based on any objective analysis of the evidence presented to the court. The indictment charges that the El Camino transaction involved ten kilograms of cocaine; however, no defendant nor any witness testified to seeing this amount. The government produced at trial only the two half kilograms of cocaine that Lewellyn received from Centracchio. Martinez testified that Valido told him there were ten kilograms of cocaine secreted in the El Camino. Martinez also testified that Guth called him when the El Camino arrived in Chicago to confirm that ten kilograms were indeed located in the car. Lewellyn also testified that Guth called him in late October and told him that the ten kilograms from the El Camino transaction would be easy to sell because they were of better quality than the seven kilograms Guth had received earlier from Silva.

At the sentencing hearing the district judge stated he did not give credibility to Martinez's testimony because Martinez never saw the cocaine and because subsequent taped conversations with Lewellyn, Guth, Centracchio and Martinez refer to the fact that $40,000 was still owed for the transaction. The district judge reasoned that if ten kilograms had been involved, the dollar mounts would have been much greater than $40,000.[1] Even though the district judge believed Martinez was exaggerating the amount of cocaine actually involved in the El Camino transaction, the judge stated he believed the transaction to involve a substantial amount of cocaine based upon the significance of the operation, amounts of cocaine involved in other transactions in which Guth and Centracchio participated, and the repeated references to $40,000 in taped conversations with Lewellyn, Centracchio, Guth and Martinez.

Part D of the Guidelines concerns offenses involving drugs. Since the only cocaine the government seized in this case was the two half kilograms that Lewellyn received from Centracchio, Application Note 2 to Section 2D1.4 is relevant. Note 2 reads:

> Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

We think the district court properly considered the factors enumerated in Application Note 2 in coming to a decision that Guth and Centracchio were responsible for four to five kilograms of cocaine with respect to the El Camino transaction. The court noted that it considered the amount of cocaine in other drug deals in which Guth and

---

1. The government explains in its brief that the $40,000 figure represented money Guth and Centracchio still owed to Martinez for the ten kilograms of cocaine after Guth paid Martinez $100,000. These amounts add up to $140,000, which is precisely the total that Lewellyn and Martinez testified Guth agreed to pay for ten kilograms of cocaine.

Centracchio were involved and which they discussed with Lewellyn in taped conversations. There was also evidence before the court that a kilogram of cocaine cost between $13,000 and $20,000. The court thus concluded that the $40,000 figure repeatedly referred to by Centracchio, Guth, Martinez and Lewellyn as the amount outstanding due to Valido's sources for the cocaine involved in the El Camino transaction corresponded to approximately two to three kilograms of cocaine. Moreover, there was evidence that in late October of 1987 Lewellyn called Centracchio who told Lewellyn that Guth had mismanaged the money from the El Camino cocaine but that Centracchio himself had multiple units (there was testimony that it was three or four kilograms) that he would try to sell quickly. As the government points out in its brief, the district court could reasonably conclude the El Camino transaction involved more than three to four kilograms if Centracchio was to collect money for other kilograms that Guth had fronted to customers in order to extinguish his personal debts while still having multiple kilograms left to sell. Indeed, the government asserted at the sentencing hearing and before us on appeal that it proved by a preponderance that there were ten kilograms involved in the El Camino transaction. The trial court found there to be only four to five kilograms involved. We do not think the district court's finding is clearly erroneous, and we affirm.

■ The next issue applies to Centracchio alone. Centracchio argues that the district court improperly concluded he was responsible for the entire amount of cocaine involved in the El Camino transaction. Centracchio maintains the district judge sentenced both him and Guth on the assumption that both men were equally responsible for the amount of cocaine involved in the El Camino transaction when the evidence suggests otherwise.

We have said that "the conduct for which a defendant can be sentenced under the Guidelines is limited to that conduct which is reasonably foreseeable." *United States v. Edwards*, 945 F.2d 1387, 1389 (7th Cir. 1991). Centracchio contends he was

brought into Guth's operation late in the day and was therefore not aware of how much cocaine was initially shipped to Guth in the El Camino. But even a "Johnny-come-lately may be liable for acts committed before he joined [the conspiracy]" as long as the defendant who agreed to conspire demonstrates commitment towards achieving the conspiracy's goals. *Id.* at 1395.

There was evidence that Guth told Lewellyn as early as June of 1987, before any cocaine was shipped to Guth, that Centracchio was a member of Guth's organization in Chicago. When Lewellyn called Centracchio on October 30, 1987, Centracchio told Lewellyn that the operation was in a shambles because Guth had mismanaged the money, but that he, Centracchio, had multiple units that he would try to sell quickly in order to raise money to save the operation. Moreover, Centracchio travelled to Florida in November of 1987 in order to meet with Martinez and Valido to persuade them to give him more cocaine to sell so that they could be repaid. Although Martinez and Valido did not give Centracchio any more cocaine, the sum of this evidence establishes that Centracchio was committed to the objectives of distributing the cocaine from the El Camino transaction, and he attempted to negotiate more deliveries. It was therefore not clearly erroneous for the district judge to conclude that the entire amount of cocaine involved in the El Camino transaction was reasonably foreseeable to Centracchio.

■ The last issue is raised by Guth alone. Guth maintains remand is necessary for his sentence on Count Two of the indictment, which charges that between October 6, 1987, and November 1987 Guth and Centracchio possessed with the intent to distribute approximately ten kilograms of cocaine—the El Camino transaction. The district court sentenced Guth on Count Two to a concurrent sentence identical to the sentence the court applied to Guth's conduct charged in the conspiracy count of the indictment, Count One. While it is undisputed that the conspiracy continued beyond the effective date of the Guidelines,

Guth argues that the district court never specifically found that his conduct charged in Count Two occurred after November 1, 1987, even though the court sentenced Guth for the offense under the Sentencing Guidelines. If the possession occurred prior to November 1, 1987, the Sentencing Guidelines do not apply. The government points out that as of October 30, 1987, there was evidence that Centracchio had at least three to four kilograms from the El Camino transaction that he was trying to sell in order to save the operation, so the government maintains the evidence supports Guth's sentence on Count Two under the Guidelines. However, the government does not object to a remand of Guth's case for the limited determination of whether Guth's conduct charged in Count Two continued beyond the effective date of the Guidelines. Our review of the transcript of the sentencing hearing reveals that the district court never made the finding Guth argues must be made if his conduct is to be sentenced under the Guidelines. We therefore remand Guth's case to the district court so that Judge Duff may determine whether Guth's conduct charged in Count Two continued past November 1, 1987.

*Conclusion*

We affirm the district court's sentences entered against Centracchio, and we also affirm Guth's sentence on Count One, the conspiracy count. We vacate Guth's sentence on Count Two and remand Guth's case for a determination of whether his conduct charged in Count Two of the indictment continued beyond the effective date of the Sentencing Guidelines and for resentencing in accordance with that determination.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.