UNITED STATES of America,
Plaintiff–Appellee,

v.

Claude H. ATKINSON and Jerry
D. Montgomery, Defendants–
Appellants.

Nos. 91–3399, 91–3411.

United States Court of Appeals,
Seventh Circuit.

Argued May 27, 1992.

Decided Nov. 16, 1992.

As Amended Nov. 30, 1992.

Donna Eide (argued), Office of the U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Robert C. Perry (argued) and Jack F. Crawford (argued), Indianapolis, Ind., for defendants-appellants.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

RIPPLE, Circuit Judge.

On September 5, 1991, Claude Atkinson and Jerry Montgomery pled guilty to one count of conspiracy to manufacture, manufacturing, and possessing with intent to distribute more than 1000 marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and 846. Mr. Atkinson also pled guilty to a single count of structuring currency transactions in order to avoid reporting requirements in violation of 31 U.S.C. § 5324(3). Mr. Atkinson was sentenced to twenty-five years' imprisonment on the conspiracy count and five years, to run concurrently, on the money laundering. Mr. Montgomery was sentenced to eight years' imprisonment and five years' supervised release on the conspiracy count. Both defendants appeal their sentences.[1] For the reasons that follow, we vacate Mr. Atkinson's sentence and remand for resentencing, but we affirm Mr. Montgomery's sentence.

I

## BACKGROUND

On August 21, 1990, the defendants were charged initially and they pled not guilty. A three-count indictment was filed against them on September 19, 1990, followed by a superseding indictment that added a count against Mr. Atkinson for structuring the currency transaction to avoid reporting. In addition, on December 14, 1990, the government filed an information alleging that Mr. Atkinson had two prior felony convictions and seeking, pursuant to 21 U.S.C. § 841(b)(1)(A), enhancement of the mandatory minimum sentence.

Both defendants expressed their desire to change their pleas, and on May 13, 1991, the government and Mr. Montgomery filed a Final Plea Agreement providing that Mr. Montgomery would plead guilty to Count I (conspiracy to manufacture marijuana) and that the government would dismiss the balance of the counts. As part of this arrangement, Mr. Montgomery agreed to cooperate with the government in its investigations. In exchange for this cooperation, the government agreed to file a motion pursuant to U.S.S.G. § 5K1.1 (Substantial Assistance to Authorities), requesting a downward departure from the Guidelines range. The parties also agreed on a sentencing cap of eleven years pursuant to Fed.R.Crim.P. 11(e)(1)(C).[2]

On July 15, 1991, the government and Mr. Atkinson filed a Final Plea Agreement providing that he would plead guilty to Count I (conspiracy to manufacture marijuana) and Count IV (currency structuring) and the government would dismiss the other counts. Mr. Atkinson agreed to cooperate with the government in its investigations in exchange for the government's commitment to file a motion under U.S.S.G. § 5K1.1 requesting a downward departure

---

**1.** Another defendant, Alex Soloweyko, is not a party to this appeal.

**2.** Fed.R.Crim.P. 11(e)(1)(C) provides in pertinent part:

The attorney for the defendant ... may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

. . . . .

(C) agree that a specific sentence is the appropriate disposition of the case. ,

from the Guidelines range. The parties also arrived at a sentencing cap of thirty-five years pursuant to Fed.R.Crim.P. 11(e)(1)(C). In addition, the government agreed to dismiss the information alleging two prior drug convictions.

At the change of plea hearing, the district court heard the factual basis for the charges. Drug Enforcement Agency (DEA) Special Agent Alter testified under oath that, on March 18, 1990, Mr. Montgomery was arrested and a subsequent search recovered about two pounds of marijuana and $13,000.00. (Change of Plea Hearing Tr. at 38). DEA agents searched his residence and found land contract documents[3] and receipts for the purchase of farm equipment; Mr. Atkinson's name appeared on some of the documents. Because Mr. Atkinson had previously been involved in a land contract purchase of a farm in order to grow marijuana, the DEA began surveillance of him. (Id. at 39). The investigation led them to a farm that Mr. Atkinson was buying on land contract in Green County, where the agents found thousands of marijuana seedlings being grown. The seedlings were interplanted with corn. (Id. at 40). Mr. Atkinson had been photographed in the marijuana fields, and on two occasions agents thought they saw Mr. Montgomery at the farm. (Id. at 41–42). Pursuant to a search warrant, the agents searched the farm on August 22, 1990, and they found approximately 10,000 marijuana plants. Mr. Atkinson and Mr. Montgomery were subsequently arrested.

Internal Revenue Service Special Agent James Hinkle testified that in January 1990 two corporations had been formed in Indianapolis, Indiana: one was named Investment Holding, Inc., with incorporators Arno Zepp and Charles Peters, and the other was named Land Holdings, Inc., with Tim Bolden as incorporator. (Id. at 45–46). In February 1990, five non-interest-bearing bank accounts had been opened in the name of Investment Holding, Inc. and two accounts in the name of Land Holdings, Inc. (Id. at 46). No taxpayer identification numbers were furnished. Between February 9 and March 10, 1990, forty-three deposits of $2,000.00 each had been made to the accounts, totalling $86,000.00. (Id.). Records pertaining to each of the accounts were found at Mr. Atkinson's residences and in his automobile. (Id. at 47). Mr. Atkinson later admitted that he had set up the accounts and conducted the transactions in such a way as to avoid the requirement of IRS reporting. (Id.).

On September 27, 1991, Mr. Atkinson was sentenced on the basis of a total offense level of 36 and a Criminal History Category of VI, which yields an incarceration range of 324 to 405 months. (Appeal Record at 28). The court noted that a cap of thirty-five years had been agreed to and that the government had requested a Guideline § 5K1.1 downward departure. The judge imposed a sentence of twenty-five years on Count I and five years on Count IV to run concurrently. A special assessment of $100.00 was imposed.

Mr. Montgomery was also sentenced on September 27, 1991, after the court took into consideration the Presentence Report, the government's Guideline § 5K1.1 motion, and a letter from Mr. Montgomery's mother. The court determined the Guidelines range to be 151 to 188 months and that the Guidelines called for a five-year period of supervised release. The defense made no objections. The court also took into consideration the plea agreement that provided for a cap of eleven years. Mr. Montgomery was sentenced to eight years' incarceration followed by five years' supervised release; he was also ordered to pay a special assessment of $50.00.

II

DISCUSSION

 Pursuant to the jurisdiction granted this court under the Sentencing Reform Act, we review sentences for errors of law and for misapplications of the Sentencing

---

**3.** In fact, one land contract was for a farm in Cloverdale, Indiana, which had been abandoned. Agents did, however, discover evidence that marijuana had been grown there. (Tr. at 42).

Guidelines. *See* 18 U.S.C. § 3742(a) and (b). A sentencing judge's findings of fact at a sentencing hearing are reviewed only for clear error. *United States v. Miller*, 891 F.2d 1265, 1269 (7th Cir.1989) (citing *United States v. Agyemang*, 876 F.2d 1264, 1271 (7th Cir.1989)). Determination of the quantity of drugs for sentencing purposes is a factual inquiry subject to the clearly erroneous standard. *United States v. Centracchio*, 977 F.2d 1061, 1065 (7th Cir.1992). The court's interpretation of Sentencing Guidelines language is reviewed de novo. *United States v. Kosth*, 943 F.2d 798, 800 (7th Cir.1991). However, where, as here, objections are raised to the sentencing procedures that were not raised at the time of sentencing, waiver results, *United States v. Blythe*, 944 F.2d 356, 359 (7th Cir.1991), and we shall reverse only if plain error has occurred. *Id.* (citing *United States v. White*, 903 F.2d 457, 466 (7th Cir.1990)).

## A. *Claude Atkinson*

 The government originally filed an information alleging that Mr. Atkinson had two prior felony convictions which, pursuant to 21 U.S.C. § 841(b), mandated a life sentence without release in the event of his conviction for any offenses charged in the indictment.[4] The government agreed to dismiss this information as part of the plea agreement. Nevertheless, the presentence report indicated that Mr. Atkinson qualified under the Guidelines as a career offender. *See* U.S.S.G. § 4B1.1. This section of the Guidelines provides that a person may be considered a career offender if he was at least eighteen years old when charged, if the charged crime is either one of violence

or one that involves a "controlled substance offense," as that term is defined in U.S.S.G. § 4B1.2,[5] and if he has at least two prior felony convictions for either a crime of violence or "a controlled substance offense." If all of these conditions are met, the offender's conduct is then characterized as falling into Criminal History Category VI. At sentencing, the district court and the parties proceeded on the assumption that U.S.S.G. § 4B1.1 was applicable. Now the government concedes that one of the felonies upon which it relied involves nothing more than the possession of a controlled substance and does not entail the "intent to manufacture, import, export, distribute, or dispense" as required by U.S.S.G. § 4B1.2. *See Young v. United States*, 936 F.2d 533, 536–37 (11th Cir.1991) (noting that § 4B1.2 requires drug *trafficking* crimes).

While the parties do not dispute that the starting point for the calculation was established in error, they disagree about the proper course that should be followed to correct the miscalculation. The government now argues that the parties arrived at the cap of thirty-five years after dismissing the information because of the assumption that Mr. Atkinson's conduct fell into Criminal History Category VI. The government maintains that it should be clear from the terms of the plea agreement that, but for the assumption that Mr. Atkinson fell into Category VI, it would not have dismissed the information. If the sentence is vacated and Mr. Atkinson resentenced, submits the government, he will receive more than he bargained for. Rather, argues the government, the court should re-

---

**4.** Section 841(b)(1)(A) provides, inter alia, that when a person is convicted under subsection (a) for a violation involving "1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 1,000 or more marijuana plants regardless of weight," and when that person has two or more prior convictions for a *felony drug offense*,

such person shall be sentenced to a mandatory term of life imprisonment without release.... [T]he term 'felony drug offense' means an offense that is a felony under any provision of this title or any other Federal law that prohibits or restricts conduct relating to narcotic drugs, marijuana, or depressant or

stimulant substances or a felony under any law of a State or a foreign country that prohibits or restricts conduct relating to narcotic drugs, marijuana, or depressant or stimulant substances.

**5.** Section 4B1.2 defines "controlled substance offense" as "an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."

form the plea agreement to correct a mutual mistake, striking the career offender clause and permitting the government to refile the information. The government argues that a plea agreement is but a contract, *United States v. Osborne,* 931 F.2d 1139, 1162 (7th Cir.1991) (quoting *United States v. Sophie,* 900 F.2d 1064, 1071 (7th Cir.), *cert. denied, sub nom. Duque v. United States,* — U.S. —, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990)), and is therefore subject to ordinary contract principles, including an examination of the parties' reasonable expectations. *Sophie,* 900 F.2d at 1071 (citing *United States v. Fields,* 766 F.2d 1161, 1168 (7th Cir.1985)). Mr. Atkinson submits that it would be unfair to expose him to a mandatory life sentence after he pled on the strength of the government's undertaking that it would withdraw the information (and thus the exposure to life in prison) and after he fully cooperated with the government.

We cannot accept the government's suggestion that we reform the plea agreement on the basis that the parties made a mutual mistake about its premises. While a contract may be reformed for a mutual mistake, this remedy is appropriate only when the contract fails to reflect accurately the terms of the agreement. This is not the case here. In any event, many courts, including this one, have recognized that the contract law analogy has limits in this context and reformation seems to be one of them. *See, e.g., Carnine v. United States,* 974 F.2d 924, 928 (7th Cir.1992) (noting that plea agreements are "unique contracts"); *United States v. Olesen,* 920 F.2d 538 (8th Cir.1990) (reversing the district court's reformation of a plea agreement). Mr. Atkinson pled in reliance on the government's undertakings, and he performed all of his obligations by cooperating with the government in other prosecutions. To use a life sentence as the staging point for a resentencing would severely disadvantage Mr. Atkinson in a circumstance where the government's lack of precision in drafting the plea agreement caused the error. *See United States v. Garcia,* 956 F.2d 41, 44 (4th Cir.1992) (quoting *United States v. Harvey,* 791 F.2d 294, 300–301 (4th Cir. 1986)) (holding government to higher standard for imprecision in plea agreements). Mr. Atkinson pled in reliance on the undertakings made by the government that were memorialized in the plea agreement. The government received the stated bargain: Mr. Atkinson's information. And Mr. Atkinson got his reduced exposure in return.

Because it is clear that Mr. Atkinson's conduct should not have been characterized as subject to Criminal History Category VI, his sentence must be vacated and the case remanded for resentencing. *See Williams v. United States,* — U.S. —, —, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992); 18 U.S.C. § 3742(f)(1). While not all aspects of his sentencing were erroneous, the effect of a vacation is to nullify the previously-imposed sentence. *United States v. Barnes,* 948 F.2d 325, 330 (7th Cir.1991). Therefore, the district court will be writing on a clean slate and may entertain any and all objections, even those not raised at the earlier sentencing. *See United States v. Shaw,* 883 F.2d 10, 12 (5th Cir.), *cert. denied sub nom. Baker v. United States,* 493 U.S. 983, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989). Consequently, we need not consider Mr. Atkinson's other complaints about the sentencing process.[6]

### B. *Jerry Montgomery*

#### 1. Drug quantity

■ Mr. Montgomery does not dispute the district court's characterizing his conduct as within Criminal History Category I, but he joins Mr. Atkinson in arguing that, in arriving at the total offense level of 34, the district court did not rely on an accurate assessment of the quantity of drugs. He requests that his sentence be vacated

---

**6.** Mr. Atkinson's Sixth Amendment claim of ineffective assistance of counsel at the sentencing hearing is rendered moot. We note that Mr. Atkinson has challenged the constitutionality of the one-plant-equals-one-kilogram formula found in a footnote to the Drug Quantity Table, U.S.S.G. § 2D1.1(c). This court has twice spoken to that issue and will not revisit it. *See United States v. Haynes,* 969 F.2d 569 (7th Cir. 1992); *United States v. Webb,* 945 F.2d 967 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1228, 117 L.Ed.2d 463 (1992).

and that we remand for a hearing under *United States v. Rone*, 743 F.2d 1169 (7th Cir.1984). Because Mr. Montgomery did not raise this issue at the sentencing hearing, we shall consider it only on a "plain error" standard. *Blythe*, 944 F.2d at 359. Under this standard, we are required to correct "particularly egregious errors." *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). We shall reverse the district court only if we are "convinced that it is necessary in order to avert an actual miscarriage of justice." *United States v. Requarth*, 847 F.2d 1249, 1254 (7th Cir.1988).

Mr. Montgomery points out minor deviations in the description of the quantity of marijuana attributed to him. He also notes that his presentence report ("PSR") contains a description of the amount of marijuana that differs slightly from the description in Mr. Atkinson's PSR. Mr. Montgomery notes that Special Agent Alter testified at the change of plea hearing that "approximately 10,000" marijuana plants were discovered at the farm. Mr. Montgomery's PSR says that "more than 10,000 marijuana plants" were found at the farm. (Montgomery PSR at 11). By comparison, the PSR for Mr. Atkinson recited that "[a]pproximately 10,200 marijuana plants were seized." (Atkinson PSR at 15). Relying on these discrepancies, Mr. Montgomery requests that we remand; he argues that the district court relied on quantity estimates that do not have " 'sufficient indicia of reliability to support [ ] probable accuracy.' " *United States v. Miller*, 891 F.2d 1265, 1270 (7th Cir.1990) (quoting *United States v. Marshall*, 519 F.Supp. 751, 754 (E.D.Wis.1981), *aff'd*, 719 F.2d 887 (7th Cir. 1982)). In short, Mr. Montgomery does not want the court to rely on what he submits are vague estimations when the difference between 9,999 and 10,000 plants produces a significantly different sentence exposure.[7]

In *Rone*, the court held that due process requires that a defendant be sentenced on accurate information. *Rone*, 743 F.2d at 1171 (citing *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972)).[8] "In protecting a defendant's right not to be sentenced based on inaccurate or unreliable information, this court has focused upon the defendant's opportunity to rebut the government's evidence and the information in the presentence report." *United States v. Agyemang*, 876 F.2d 1264, 1270 (7th Cir.1989). In order to set aside a sentence, therefore, the defendant must show that false information was before the court and that the court relied on it in arriving at the sentence. *Rone*, 743 F.2d at 1171. To safeguard the defendant against such a risk, we interpreted Fed.R.Crim.P. 32(c)(3)(A) to require that a sentencing judge ask three questions: whether the defendant had a chance to read the PSR; whether the defendant had a chance to discuss it with counsel; and whether the defendant wishes to challenge the PSR in any way. *Id.* at 1174. Once the defendant does challenge any portion of the PSR, the court is bound under Fed.R.Crim.P. 32(c)(3)(D) either to make a finding or to assert that the sentence imposed did not rely on the controverted fact. Resentencing is proper when the judge failed to ask any of the questions and when the defendant identifies facts that would be disputed if defendant had been given the opportunity. *See United States v. Radix Lab., Inc.*, 963 F.2d 1034 (7th Cir.1992) (citing *United States v. Rodriguez–Luna*, 937 F.2d 1208, 1213 (7th Cir. 1991)).

Mr. Montgomery does not assert that the *Rone* questions were not asked; nor does he argue that there was no opportunity to raise objections to the plant count. Mr. Montgomery does not even argue that the count is wrong, only that the court should have realized that the figure was not reli-

---

7. Under the Drug Quantity Table, found at U.S.S.G. § 2D1.1(c), the base offense level for a crime involving "[a]t least 10,000 KG but less than 30,000 KG of Marihuana" is 36, while the level for a crime involving "[a]t least 3,000 KG but less than 10,000 KG of Marihuana" is 34.

8. *Accord Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States ex rel. Welch v. Lane*, 738 F.2d 863, 864–65 (7th Cir.1984).

able. *Rone* requires notice and an opportunity to be heard; Mr. Montgomery had both. We have examined the sentencing hearing transcript. It reflects that Judge Barker clearly inquired whether Mr. Montgomery's counsel had read the PSR to him (Mr. Montgomery is unable to read), and Mr. Montgomery replied in the affirmative. (Montgomery Sent. Tr. at 2–3). While it is true that the court did not specifically inquire into whether Mr. Montgomery had discussed the PSR with counsel, the implication is clear that Mr. Montgomery and counsel had an opportunity to do so when they reviewed the PSR together. Indeed, Mr. Montgomery affirmatively stated that he was familiar with the contents of the PSR. Finally, Judge Barker asked Mr. Montgomery if he had any changes or corrections that he would like to make to the contents of the PSR, and he said "I don't think so." (Montgomery Sent. Tr. at 5).

Mr. Montgomery and his counsel had been on notice, at least since the change of plea hearing, that a figure of 10,000 or more plants was at issue. Accordingly, they were on notice that this figure would probably be considered by the court at sentencing. They clearly reviewed the PSR prior to the sentencing hearing. Notably, defense counsel chose not to cross-examine DEA Agent Alter at the change of plea hearing. (Change of Plea Hearing Tr. at 44). Indeed, counsel failed to question the figure included in the PSR when given an opportunity at the sentencing hearing. Instead, the court was given no indication that there was anything but agreement regarding the numbers. On this record, we cannot say that Mr. Montgomery was deprived of a fair sentencing process and was not given a chance to air his objections.

The government also contends that the district court's apparent reliance on the submission that more than 10,000 marijuana plants were implicated was justified because the sworn testimony of the DEA agent had the indicia of reliability required under *Miller*, 891 F.2d 1265, and that courts have regularly accepted similar testimony of marijuana quantity for sentencing purposes, especially when the opportunity to cross-examine and offer competing testimony is provided. This contention is well-grounded in the case law. *United States v. Donaldson*, 915 F.2d 612, 614 (10th Cir.1990). *See also United States v. Uwaeme*, 975 F.2d 1016 (4th Cir.1992) (collecting cases to demonstrate the latitude given to estimating drug quantity for sentencing purposes). In any event, it is important to note that the district court was not presented with competing estimations of the quantity of controlled substances involved. The requirement of "sufficient indicia of reliability to support its probable accuracy" is employed by U.S.S.G. § 6A1.3 of the Guidelines when the sentencing court must resolve such a dispute. *See United States v. Angulo*, 927 F.2d 202 (5th Cir.1991) (holding that sentencing judge's reliance on an officer's observations regarding quantity was not clearly erroneous when no evidence was offered to the contrary). Here Mr. Montgomery had every opportunity to question the validity of the figure, but he chose to remain silent. Accordingly, we conclude that the district court committed no error in relying on the figure in the PSR for purposes of sentencing.

### 2. Section 5K1.1 departure

Mr. Montgomery also submits that the district court erred in failing to afford him a more generous downward departure because he provided assistance to the government. *See* 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1. Mr. Montgomery's Criminal History Category was I and his beginning offense level was 36, which was reduced to 34 for acceptance of responsibility. In the end, Mr. Montgomery was sentenced to eight years, which is the equivalent of an offense level of 28 or 29, Category I. Consequently, the district court in effect departed downward five or six points. Mr. Montgomery points out that his assistance led to the indictment and conviction of many others and that his information was "for the most part" truthful and complete. (Appellants' Br. at 27). It is particularly significant, he points out, that he testified against his own brother. The government counters that his assis-

tance was neither timely, nor completely candid. (Montgomery Sent. Tr. at 17, 19).

Mr. Montgomery argues that his assistance satisfies at least four of the factors set forth in U.S.S.G. § 5K1.1[9] and therefore he is entitled to an eight-point reduction. This calculation would yield an offense level of 26, which, in combination with a Criminal History Category of I, produces a sentencing range of 63 to 78 months. Mr. Montgomery relies upon *United States v. Thomas*, 930 F.2d 526 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991). In *Thomas*, we said that a district court's downward departure must "be linked to the structure of the guidelines.... The sentencing judge is thus required to articulate the specific factors justifying the extent of his departure and to adjust the defendant's sentence by utilizing an incremental process that quantifies the impact of the factors considered by the court on the defendant's sentence." *Id.* at 530–31. *Thomas* does not require, however, a two-point reduction for satisfaction of each of the factors listed in U.S.S.G. § 5K1.1. Moreover, the language of U.S.S.G. § 5K1.1 does not lend itself easily to such a methodology; it simply sets forth a non-exhaustive list of considerations to guide the discretion of the district court. In addition, the Application Note to U.S.S.G. § 5K1.1 states that the value of the assistance to the government involves "a broad spectrum of conduct that must be evaluated by the court on an individual basis. Latitude is, therefore, afforded the sentencing judge to reduce a sentence based upon variable relevant factors...."

At the sentencing hearing, the district court carefully considered Mr. Montgomery's offerings in aid of the government's prosecution, finding them "not only substantial ... but in some ways ... unique." (Montgomery Sentencing Tr. at 19). Furthermore, the court clearly was aware that Mr. Montgomery's assistance was made more difficult because he was obliged to testify against family members. However, the court also noted that Mr. Montgomery was less than completely forthcoming. Nevertheless, as the government points out, by sentencing Mr. Montgomery to eight years (96 months), the district court effectively reduced the offense level by the equivalent of five or six offense levels. Because the sentencing court carefully weighed Mr. Montgomery's assistance, it did not abuse its discretion.

### Conclusion

For the reasons we have stated, we vacate Mr. Atkinson's sentence and remand to the district court for resentencing. We affirm Mr. Montgomery's sentence.

No. 91–3399: SENTENCE VACATED AND REMANDED.

No. 91–3411: AFFIRMED.

---

9. Guideline § 5K1.1 provides:
 Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
 (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
 (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
 (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
 (3) the nature and extent of the defendant's assistance;
 (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
 (5) the timeliness of the defendant's assistance.