**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 12 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DOUGLAS L. HINSHAW,

      Defendant-Appellant.

No. 98-3165
(D. Kan.)
(D.Ct. No. 97-CR-10097-02-MLB)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **SEYMOUR, BRORBY**, and **BRISCOE**, Circuit Judges.

_____

      After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

      Defendant-Appellant Douglas L. Hinshaw appeals his jury conviction on

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

one count of violating 18 U.S.C. § 922(d), for knowingly disposing of or delivering a firearm, knowing or having reasonable cause to know the individual to whom he delivered or disposed of the firearm had been convicted of a crime punishable by imprisonment for a term exceeding one year. All the issues raised by Mr. Hinshaw concern a two-level enhancement of his sentence under § 3B1.3 of the United States Sentencing Guidelines. We exercise jurisdiction under 28 U.S.C. § 1291 and remand for resentencing.

## I.  Factual Background

Mr. Hinshaw is a gun collector who possesses a total of sixty-five firearms, and holds a federal firearms dealer's license. He is also a business acquaintance of Garvin Mead, a convicted felon, for whom he purchased and ultimately delivered the gun at issue. Mr. Mead attempted to trade a gold chain for a .45 caliber Ruger Blackhawk revolver at a local pawn shop. However, he never filled out the required Alcohol, Tobacco and Firearms (ATF) forms to complete the transaction. After a co-worker failed to purchase the gun for him, Mr. Mead telephoned the pawn shop and asked how he could obtain it. The proprietor, who did not know of his prior felony convictions, told Mr. Mead he must fill out the required ATF forms and wait five days to get the gun, or a federal firearms licensee could come in and pick it up without observing the waiting period.

The next day, Mr. Hinshaw, at Mr. Mead's request, brought the same gold chain to the pawn shop and traded it for the .45 caliber Ruger Blackhawk. When the proprietor informed Mr. Hinshaw of his difficulty in testing the gold chain to ensure its quality, Mr. Hinshaw replied he would "have to take it up with Garvin." Mr. Hinshaw signed and dated his federal firearms license and then gave it to the proprietor. Although Mr. Hinshaw previously purchased guns from the pawn shop, he had never used his federal firearms license.

Later that day, Mr. Mead and his wife came to Mr. Hinshaw's home to obtain the gun. At that time, Mr. Hinshaw claims he first became aware of Mr. Mead's felony convictions and refused to turn the gun over to Mr. Mead. Instead, he gave it to Mr. Mead's wife. After delivery of the gun, Mr. Hinshaw did not make an entry of the transaction in his acquisition and disposition record or fill out any of the required ATF forms. He also failed to notify the appropriate ATF division within forty-eight hours that he no longer possessed the gun, as required by ATF regulations.

The next day, through a search warrant and with cooperation from Mr. Mead's wife, police recovered several items stolen by Mr. Mead, along with the .45 caliber Ruger Blackhawk. The police traced the gun to the pawn shop,

interviewed its proprietor, and discovered Mr. Hinshaw purchased the gun for Mr. Mead.

## II. Sentencing

The jury found Mr. Hinshaw guilty of violating 18 U.S.C. § 922(d) for knowingly disposing of or delivering a firearm to Garvin Mead, knowing or having reasonable cause to know Mr. Mead had been convicted of a crime punishable by imprisonment for a term exceeding one year. Prior to sentencing, the United States Probation officer issued a presentence report suggesting a two-level enhancement of his sentence under § 3B1.3 of the United States Sentencing Guidelines. This guideline requires an upward adjustment for "persons who abuse their positions of trust or their special skills to facilitate significantly the commission or concealment of a crime." *See* U.S.S.G. § 3B1.3, comment. (backg'd). Specifically, the presentence report, in addressing § 3B1.3, stated:

> The defendant is a licensed federal firearms dealer. He used this license to purchase the firearm in question. He then provided the firearm to a convicted felon and did not record the transaction or provide information to the Bureau of Alcohol, Tobacco and Firearms. He definitely used his position as a dealer, and his license, to facilitate the commission of the offense conduct and attempt to conceal it. Thus, an enhancement for a violation of position of trust or special skill is appropriate.

Mr. Hinshaw objected to the § 3B1.3 enhancement report prior to and during the sentencing hearing.

At the sentencing hearing, the judge overruled Mr. Hinshaw's objection, determining the federal firearms license held by Mr. Hinshaw amounted to "a special skill within the meaning of Section 3B1.3." Relying on *United States v. Gandy*, 36 F.3d 912 (10th Cir. 1994), the judge stated "I think that if the government gives someone a federal firearms license that the government intends to ... follow the law with respect to that license and not abuse the license ... and under *Gandy*, element one has been met."

Having found the firearms licence provided Mr. Hinshaw with a special skill, the sentencing judge next found Mr. Hinshaw used that special skill to facilitate the offense by using his license to obtain a gun for "a person who he knew or had reasonable cause to believe ... couldn't get one." He determined the firearms license "did make it easier ... to commit the offense, which was to deliver a firearm to Garvin Mead. ... The [*Gandy*] case goes on to say the defendant uses his special skill if he uses that skill to facilitate the commission of his offense. And that's what I believe the facts show." He stated "the gravamen of what he did ... is that he had to know that Garvin Mead wasn't entitled to possess a weapon under any circumstances whether it be one day, five days or five years.... [B]y using the license to get it ... he knew he was gonna turn that weapon over to Garvin Mead." In rendering the sentence, the court adopted the

-5-

presence report's U.S.S.G. § 3B1.3 enhancement recommendation, adding the two-level increase to the base offense level. The resulting sentence included imprisonment of twenty-one months, two years supervised release, and a $100 special assessment.

III. Appeal

In his appeal, Mr. Hinshaw contests only the U.S.S.G. § 3B1.3 enhancement of his sentence. In support, he raises several compound arguments which we reduce to the following contentions: (1) as a federal firearms licensee, he did not hold a position of trust characterized by professional or managerial discretion; (2) his firearms license did not create a position of trust or special skill providing an opportunity to commit an offense since delivering a firearm to a convicted felon is something any person could do; (3) his failure to comply with federal firearms license record-keeping requirements did not establish special skills for the purposes of U.S.S.G. § 3B1.3; (4) his failure to keep proper records did not significantly facilitate concealment of the offense; (5) even if he did hold a position of trust by using his firearms license, the use of his license did not contribute to the concealment of the offense, but actually made detection of the offense easier; and (6) his innocent purchase of the firearm with his license did not facilitate the offense because he discovered Mr. Mead's conviction only after

purchasing the gun.

## IV. Discussion

For the purpose of enhancing a sentence, U.S.S.G. § 3B1.3 requires an upward adjustment for "persons who abuse their *positions of trust* or their *special skills* to facilitate significantly the commission or concealment of a crime." *See* U.S.S.G. § 3B1.3, comment. (backg'd) (emphasis added). Mr. Hinshaw's argument centers, in part, on whether his firearms license created "a position of trust." While the sentencing judge mentioned the possibility Mr. Hinshaw may have abused his position of trust with the federal government, he found, for the purpose of enhancing Mr. Hinshaw's sentence, he possessed a "special skill." In its brief, the federal government argues only that Mr. Hinshaw possessed a special skill. Therefore, we need not determine whether Mr. Hinshaw abused a position of trust, only whether he possessed a special skill that facilitated the commission or concealment of the offense. We review the district court's factual findings Mr. Hinshaw possessed a special skill and that he used his special skill to facilitate the commission or concealment of his offense, for clear error. *See Gandy*, 36 F.3d at 914.

We begin with an inquiry under U.S.S.G. § 3B1.3 to determine whether Mr.

Hinshaw possessed a "special skill" in light of having and then using his federal firearms license. Webster's dictionary defines "skill" as "the learned power of doing something competently: a developed or acquired aptitude or ability." Webster's Third Int'l. Dictionary, at 2133 (1981 ed.). The commentary to § 3B1.3 explains that a special skill refers to "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing." *See* U.S.S.G. § 3B1.3, comment., n. 3. Examples include "pilots, lawyers, doctors, accountants, chemists, and demolition experts." *Id.* We recognize a defendant need not complete formalized educational or licensing requirements in order to possess a special skill. A special skill can also come from experience or from self-teaching. *Gandy*, 36 F.3d at 914. To apply a U.S.S.G. § 3B1.3 enhancement, the skill "'must be more than the mere ability to commit the offense.'" *See United States v. Burt*, 134 F.3d 997, 999 (10th Cir. 1998) (quoting *United States v. Young*, 932 F.2d 1510, 1513 (D.C. Cir. 1991)).

In applying this court's definition of "special skill" to Mr. Hinshaw, we next examine the qualifications and duties required of a federal firearms dealer. The term "dealer" is defined as any person engaged in the business of selling firearms at wholesale or retail. *See* 18 U.S.C. § 921(a)(11). Dealers in firearms must be licensed by the ATF Bureau and must comply with ATF regulations

governing their conduct. *See United States v. Bailey*, 123 F.3d 1381, 1385 n. 1 (11th Cir. 1997) (*citing* 18 U.S.C. § 923(a)(3); 27 C.F.R. §§ 178.1-.171). Firearms licenses are only issued to "qualified applicants." 18 U.S.C. § 923(c). An applicant is qualified if he meets the requirements listed in 18 U.S.C. § 923(d)(1). These requirements are somewhat perfunctory, stating an applicant must: (1) be at least twenty-one years old; (2) not be prohibited from transporting, shipping or receiving firearms in interstate or foreign commerce; (3) not have willfully violated any federal provisions or regulations concerning firearms; (4) not have willfully failed to disclose any material information on the application; (5) have a location in a state from which the license business is conducted; and (6) certify the business will be conducted pursuant to state or local law. *See* 18 U.S.C. § 923(d)(1)(A) through (F). None of these requirements or qualifications appear to require any "developed or acquired aptitude or ability" in firearms use or trade. The application must also include a photograph and fingerprints of the applicant, and the appropriate fee. 27 C.F.R. § 178.44(a) and (b).

Once licensed, firearms dealers may purchase firearms without filling out the otherwise required ATF forms or waiting the required five-day period. *See* 27 C.F.R. § 178.102(a). In addition, licensed dealers must keep records of their

firearms transactions and obtain advance approval from the ATF Bureau for certain transactions. *See Bailey*, 123 F.3d at 1385 n.1 (citing 18 U.S.C. § 923(g); 26 U.S.C § 5812; 27 C.F.R. §§ 178.101, 178.121-178.129). Finally, they must submit to certain examinations and searches by ATF inspectors. *Id.* (citing 18 U.S.C. § 923(g); 27 C.F.R. § 178.23). In Mr. Hinshaw's case, the record shows he filled out the required license application packet and later received instruction from a visiting ATF agent, who advised him of his duties as a federal firearms licensee, including the prohibition against performing "straw purchases" for another.

Having reviewed the qualifications and duties of a firearms dealer, we proceed to the question of whether Mr. Hinshaw's license qualifies as a "special skill." Mr. Hinshaw contends almost anyone can deliver a firearm to a convicted felon. The only difference between the general public and Mr. Hinshaw is that his federal firearms license enabled him to obtain the gun without filling out ATF forms and waiting the required five days. He then provided the gun to Mr. Mead, performing the prohibited "straw purchase." Thus, he possessed the ability to purchase, without delay, the gun later delivered to Mr. Mead. However, "skill" requires something "more than the mere ability to commit the offense. *See Burt*, 134 F.3d at 999. The mere fact that Mr. Hinshaw holds a firearms license giving

-10-

him immediate access to a gun is not enough to demonstrate the kind of "special skill" contemplated under U.S.S.G. § 3B1.3.  The special skills involved in licensing pilots, lawyers, doctors, and accountants are not comparable to the somewhat perfunctory qualifications the law requires to obtain a firearms license or comply with ATF record and transaction requirements.

Applying the § 3B1.3 sentencing guideline to these facts, we conclude the sentencing judge's finding that a federal firearms license is, in and of itself, a "special skill," is based on nothing more than a mere conclusion.  Accordingly, we find the district court's two-level sentence enhancement under U.S.S.G. § 3B1.3 clearly erroneous.  Having found possession of a federal firearms license itself is not a "special skill" for the purpose of enhancement under U.S.S.G. § 3B1.3, we need not determine whether the sentencing judge erred in finding Mr. Hinshaw used his firearms license to "significantly facilitate the commission or concealment of" a crime. *See Gandy*, 36 F.3d at 915.

For the foregoing reasons, we **REMAND** to the district court with instructions to vacate the sentence and resentence in conformity with this order.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge