In the

# United States Court of Appeals

### For the Seventh Circuit

No. 06-2139

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PAUL E. PODHORN, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 03 CR 30140—**Michael J. Reagan**, *Judge.*

ARGUED SEPTEMBER 17, 2007—DECIDED DECEMBER 8, 2008

Before FLAUM, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Permission to sell firearms is not open to all comers; people wanting to engage in that business must obtain a Federal Firearms License from the Department of Treasury's Bureau of Alcohol, Tobacco, Firearms and Explosives. See 18 U.S.C. § 923; see generally http://www.atf.gov/firearms/faq/faq2.htm#a1 (last visited

November 12, 2008). Paul Edward Podhorn had such a license, but he misused it. A grand jury accordingly charged him with two counts of making false statements, in violation of 18 U.S.C. § 1001(a)(2), two counts of selling stolen firearms, in violation of 18 U.S.C. § 922(j), 22 counts of selling firearms without maintaining proper records, in violation of 18 U.S.C. § 922(b)(5), and one count of failing to maintain proper firearm records, in violation of 18 U.S.C. § 922(m). The Government dismissed one of the 22 counts of selling firearms without maintaining proper records (count 26SS), and a jury convicted Podhorn of all remaining charges.

On appeal, Podhorn's central claim is that evidence critical to his conviction should have been suppressed. Additionally, he argues that the district court erred in its calculations under the Sentencing Guidelines when it imposed several sentencing enhancements, that the court should have instructed the jury on a lesser included offense, and that the court abused its discretion when it allowed the prosecution to display a particularly menacing firearm throughout the trial even though the prosecution ended up dropping that weapon from the case.

I

Podhorn and the Government gave rather different accounts of the facts relating to the motion to suppress—indeed, the district court described the two versions as "diametrically oppose[d] . . . in many ways." In the end, however, the court decided that the Government's witnesses were more credible. It specifically stated that

"Defendant Podhorn at times was vague, nonresponsive, argumentative, inconsistent in his answers, had selective recollection, and was coy." For the record, the court also presented Podhorn's version of the facts, based on what it could "glean as best as possible" from his contentions. We review the district court's findings of historical fact under the deferential clear error standard. *United States v. Tyler,* 512 F.3d 405, 409 (7th Cir. 2008); *United States v. Groves,* 470 F.3d 311, 317-18 (7th Cir. 2006). Because Podhorn has offered no persuasive reason why we should reject the district court's findings, we accept that court's findings for purposes of this appeal.

After Podhorn's business contacts complained of improper dealing, Special Agent Robert Nosbisch of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") obtained a federal search warrant for Podhorn's business premises. The complaints also resulted in state warrants for Podhorn's arrest. While the search warrant was being executed, ATF Investigator Lisa Storey telephoned Podhorn at his brother's house and asked if she could come speak with him about his federal firearms license. He agreed. Storey soon arrived with two ATF Special Agents, Nosbisch and Jeffrey Matthews, and they spoke with Podhorn on the front lawn for about ten minutes. They then asked if he would accompany them to his business premises. Once again, he agreed. After spending ten to twenty minutes at Podhorn's store, Nosbisch asked Podhorn if he would go to the Jersey County Sheriff's Department for an interview. Yet again, he agreed.

Upon Podhorn's arrival at the Sheriff's Department, Jersey County officers arrested him on the state warrants and advised him of his *Miranda* rights. He signed an ATF *Miranda* acknowledgment and waiver form. He was then interviewed, and during the course of the interview, Nosbisch asked Podhorn if he was willing to consent to a search of his car and his personal effects located at his brother's house and at his daughter's house in Virginia. At that point, rather than consenting right away, Podhorn asked to speak with an attorney. The officers gave him contact information for three attorneys. Podhorn spoke with two of them by telephone; one actually came and talked with him in person. After speaking with the third attorney, Podhorn told the officers that he wanted to cooperate, and he signed the search consent forms. The statements Podhorn made to Nosbisch and the items found in Podhorn's place of business, his car, and among his personal effects gave rise to the charges in the second superseding indictment.

## II

Despite the strong evidence of consent, Podhorn maintains on appeal that all of this evidence should have been suppressed, and that his conviction must be reversed because it was not. He begins by asserting that the district court erred in admitting evidence obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Edwards v. Arizona*, 451 U.S. 477 (1981). In his view, the *Miranda* warnings he received came too late, after the damage was already done. The correct time, he asserts, would have

been at the start of the encounter at his brother's house, because from that moment on he was under *de facto* arrest and was being interrogated. He also claims that, once arrested, the search consent forms he signed were tainted because they were obtained through further interrogation initiated by the government after he had requested but before he had received the advice of counsel, in violation of *Edwards*.

Under *Miranda*, warnings are required only when a suspect is undergoing custodial interrogation. In deciding whether a suspect was in custody during an interrogation, we must ascertain whether the suspect's freedom of action was curtailed to a degree associated with formal arrest. *United States v. Smith*, 3 F.3d 1088, 1097 (7th Cir. 1993). As the district court noted, this determination must be made in light of the totality of the circumstances surrounding the encounter. *United States v. Jones*, 21 F.3d 165, 170 (7th Cir. 1994). We look to see how "a reasonable man in the suspect's position would have understood his situation"; relevant factors to consider include the "freedom to leave the scene and the purpose, place and length of interrogation." *Id.*

Applying this standard, the district court was "unable to conclude that Podhorn was in custody during his encounter with ATF personnel until he was formally arrested as it appears he was free to leave." Podhorn was never told he could not leave, nor did he ask or attempt to leave; he was never physically restrained; no threatening gestures or statements were made to him; the agents did not display weapons; and Podhorn was able to walk by himself back

No. 06-2139

into his brother's house to drop off his car keys before returning to accompany Nosbisch in Nosbisch's minivan. Although the minivan was used for ATF purposes, it was unmarked, had no separation between the front and back seats, and did not otherwise resemble a police car. The fact that Podhorn was not free to leave the car once it was in motion (as is always true of any rider in any car driven by any party) is not relevant because the evidence indicates that he voluntarily agreed to ride in Nosbisch's car. The district court also noted the brevity of the encounter ("five to ten minutes" at Podhorn's brother's house and "ten to twenty minutes" at Podhorn's business premises) and Podhorn's subjective awareness of his rights ("at the suppression hearing, Podhorn testified that he knew he could refuse to answer Nosbisch's questions or requests, and did in fact not answer some questions").

Podhorn's contention that the officers acted wrongfully in seeking his consent to search after he requested an attorney is unfounded. As noted above, when Podhorn asked to speak with a lawyer, "Nosbisch assisted Podhorn in contacting two private attorneys via telephone, and then arranged for Podhorn to speak privately with a state public defender. After speaking with the state public defender, Podhorn consented to [the] searches" at issue.

Having found that "there was no custodial interrogation of Podhorn prior to the time he was placed under arrest and read his Miranda rights," the district court, citing *United States v. Ienco*, 182 F.3d 517 (7th Cir. 1999), ruled that "subsequent statements and consents given could not have been tainted." We have no reason to second-guess the

district court's credibility determinations, under which it accepted Agent Nosbisch's testimony and rejected Podhorn's. The court's findings easily support its conclusion that, apart from the *Miranda* question, Podhorn's statements and waivers were voluntary. The court added that, "while in no way outcome dispositive," its conclusion on voluntariness was reinforced by the facts that Podhorn "had attended law school for two years and briefly worked in the legal field" and that the encounter had no indicia of compulsion or government overreaching, such as violence, threats, promises, or unduly protracted interrogation.

## III

Podhorn next argues that the district court erred in allowing Government Exhibit 37 (a firearm with a bipod—the subject of Count 27SS) to be displayed during the trial, because it was menacing and not probative. A district court's evidentiary rulings are reviewed for an abuse of discretion. *United States v. Gougis*, 432 F.3d 735, 742 (7th Cir. 2005).

At the post-trial forfeiture hearing, the Government announced its intention not to pursue forfeiture of that weapon because documentation the Government had received from the defense prior to trial revealed that this gun belonged to an associate of Podhorn's and that Podhorn was merely storing it. This meant that it was not subject to the reporting requirements at issue in the case.

Podhorn may well have forfeited this argument, as his brief mentions only comments that he made during the

forfeiture hearing and does not show where he raised this ground at trial. It is possible, however, that he may not have been aware of the possible objection at trial, because he did not know that the Government would eventually abandon its effort to pursue charges based on that firearm. Giving Podhorn the benefit of the doubt, we will address the issue.

The firearm labeled Exhibit 37 was among the items seized from the Virginia residence. As a general matter, that evidence was relevant and its probative value was not substantially outweighed by any unfair prejudice to the defendant. Podhorn does not claim that, at the time of trial, the district court was aware that this particular weapon would be dropped from the Government's case. Thus, given the information available to the district court at the time of trial, it was not an abuse of discretion to allow Exhibit 37 to be displayed. See *United States v. Clark*, 989 F.2d 1490, 1499 (7th Cir. 1992) ("We determine whether the trial court abused its discretion in refusing to grant severance by viewing the record at the time the motion was made.").

## IV

Podhorn next claims that the district court erred in failing to instruct the jury on the lesser included charge of *knowingly* failing to keep firearms records (a misdemeanor), where Podhorn was charged with *willfully* failing to keep firearms records (a felony).

If a defendant requests an instruction on a lesser included offense, he is entitled to the instruction if he can

prove that "(1) the offense on which he seeks an instruction is a lesser-included offense of the one charged, and (2) a rational jury could find him guilty of the lesser offense but not guilty of the greater offense." *United States v. McCullough*, 348 F.3d 620, 624 (7th Cir. 2003). Podhorn admits that "despite earlier discussions" of the possibility of charging on the lesser included offense, that issue "does not appear to have been raised at the time of the jury instruction conference." Podhorn has thus forfeited the claim, which means that our review is only for plain error. To establish plain error, Podhorn must show: (1) an error; (2) that is plain; (3) that affected his substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Montgomery*, 390 F.3d 1013, 1017 (7th Cir. 2004).

We must first determine whether the lesser included offense instruction should have been given. As Podhorn points out, and as the Government concedes, *McCullough* held that "knowingly" selling firearms without maintaining proper records, 18 U.S.C. § 922(m), is a lesser included offense within the offense of willfully selling firearms without maintaining proper records in violation of 18 U.S.C. § 922(b)(5). 348 F.3d at 628.

We therefore move to the question whether, from the evidence presented at trial, a rational jury could find that Podhorn knowingly failed to keep firearms records, but that this failure was not willful. The only support that Podhorn offers for this assertion sinks his claim. He cites to his own testimony that he "never failed to complete a Form 4473 when required to do so," "did not fail to keep proper

A&D logs," and "was not guilty of failing to keep proper records." He concludes that "had it been offered the opportunity to do so, the jury could have found that any records omissions were misdemeanors, not felonies." *Id.* But, on this record, we cannot agree with him. If the jury were to credit Podhorn's testimony, they could not find that he knowingly failed (but did not willfully fail) to keep proper records. In other words, if the jury found at all that he failed to keep records, the evidence could support only the conclusion that he did so willfully: there was no possibility of an inadvertent failure. This is well illustrated by the following excerpt of the Government's cross-examination of Podhorn:

> Q. Inspector Storey did sit down with you and explained all of the rules and regulations that would pertain to your firearms business, correct?
>
> A. Yes.
>
> Q. You understood when she left what you were supposed to do with regard to an Acquisition and Disposition book?
>
> A. Yes.
>
> Q. With regards to 4473's?
>
> A. Yes.
>
> Q. You don't dispute in this case at all that you knew what records you were supposed to keep as an FFL, correct?
>
> A. No, I don't dispute that.

Q. So you would agree with me, would you not, that if you failed to keep an Acquisition and Disposition log that that would have been a willful failure because you knew what you were supposed to do?

A. I didn't fail to keep my A&D logs.

This shows that Podhorn was challenging the basic question whether he failed to keep the required logs, not whether any omissions were willful. He cannot satisfy the second step of *McCullough* because no rational jury could have found him guilty of the lesser offense but not guilty of the greater offense. There was thus no error in failing to give the jury instruction on the lesser included offense, much less plain error.

## V

Last, Podhorn challenges two aspects of his sentence. First, he claims that he should not have received an enhancement under U.S. SENTENCING GUIDELINES § 2K2.1(b)(4) based on the fact that some firearms were stolen, because the offense with which he was charged, 18 U.S.C. § 922(j), already includes as an element the fact that the firearm is stolen. Applying the enhancement, he argues, would thus amount to double-counting. His other sentencing argument is directed at the district court's decision to enhance his Guidelines level for abusing a position of trust or using a special skill, under § 3B1.3.

We first address the stolen firearms enhancement. Section 2K2.1(b)(4) provides that, in calculating the offense

level, "if any firearm (A) was stolen, increase by two levels." Application Note 9 qualifies that rule, however:

> If the only offense to which § 2K2.1 applies is 18 U.S.C. § 922(i), (j), or (u), or 18 U.S.C. § 924(l) or (m) (offenses involving a stolen firearm or stolen ammunition) and the base offense level is determined under subsection (a)(7), do not apply the adjustment in subsection (b)(4) unless the offense involved a firearm with an altered or obliterated serial number. This is because the base offense level takes into account that the firearm or ammunition was stolen.

U.S.S.G. § 2K2.1, app. n.9 (2004).

According to the presentence report ("PSR"), Podhorn's base offense level was determined under subsection (a)(7). PSR at ¶ 32. There was no allegation or finding that Podhorn had altered or obliterated the serial number of any of those weapons. Thus, at least as an initial matter, the two-level enhancement could not be imposed for Counts 3 and 4, each of which charged that Podhorn sold stolen firearms in violation of 18 U.S.C. § 922(j).

The Government and our dissenting colleague counter that Application Note 9 does not apply to Podhorn because he has not shown that the enhancement applied *only* to his § 922(j) counts. The jury found that the firearms involved in Counts 3 and 4 were stolen, as it had to do in order to convict. PSR at ¶ 10. An examination of the jury verdict forms reveals, as the dissent notes, that the particular firearm involved in Count 3 was also the one identified in Count 5, which charges failure to keep proper records in violation of 18 U.S.C. § 922(b)(5), and the firearm at issue

in Count 4 was the one identified in Count 6, which also charges a violation of § 922(b)(5). Our dissenting colleague takes the position that the inclusion of these firearms in Counts 5 and 6 is enough to justify the enhancement described in § 2K2.1(b)(4). He stresses the fact that Application Note 9 advises against the enhancement "[i]f the *only* offense to which § 2K2.1 applies is . . . § 922(j)." Here, in his view, the indictment includes two offenses involving the stolen weapons, and the enhancement is precluded for only one of them.

The question for us is whether Application Note 9 applies in the situation before us, where the very same firearm supports both the § 922(j) convictions on *different* counts and the § 922(b)(5) conviction. It speaks in terms of the "offense" to which § 2K2.1 applies, not to the precise factual basis for any given offense. We have no doubt that the enhancement would be permissible, following the logic of our dissenting colleague, if in a different count the Government had relied upon a third stolen weapon as to which Podhorn failed to keep proper records. It would also be permissible if Counts 3 and 4 had been dropped altogether. Here, however, the only weapons that were shown to be stolen were the ones identified in Counts 3 and 4. We are left, therefore, with a situation similar to the one described in *United States v. Jackson*, 103 F.3d 561, 569 (7th Cir. 1996), where we noted that it would be double-counting to convict a defendant for use of a firearm during and in relation to a drug crime, in violation of 18 U.S.C. § 924(c), and at the same time to enhance a drug sentence under 21 U.S.C. §§ 841(a)(1) and 846 for possession of a firearm in connection with the same drug offense, using

U.S.S.G. § 2D1.1(b)(1). The problem is that "the same conduct cannot be described in two different ways to justify two different enhancements when each leads to a separate upward adjustment." *United States v. Schmeilski*, 408 F.3d 917, 919 (7th Cir. 2005). By the same token, "although premising multiple enhancements on '*identical* facts' constitutes impermissible double counting, the presence of some overlap in the factual basis for two or more upward adjustments does not automatically qualify as double counting." *Id.* (emphasis added) (internal citation omitted).

The fact that the Hess Arms Model 47 rifles, serial numbers 991068107 and 991067293, were stolen is the only thing that makes the sales charged in Counts 3 and 4 illegal. The fact that Podhorn failed to keep proper records of those sales is certainly independently criminal and independently punishable, but, by analogy to *Jackson*, we conclude that it would be double-counting to use the fact that the same weapons were stolen to enhance the advisory guideline range for the records offense. This is more than the presence of some overlap in the factual basis; the district court "really drew from the same well." *United States v. Kopshever*, 6 F.3d 1218, 1224 (7th Cir. 1993). If the district judge believes that the advisory guidelines, properly computed, do not yield a reasonable sentence, it is free to select a higher sentence, or to order that the sentences run consecutively, in whole or in part. See *Kimbrough v. United States,* 128 S.Ct. 558, 574 (2007) ("district courts must treat the Guidelines as the 'starting point and the initial benchmark'"), citing *Gall v. United States*, 128 S.Ct. 586, 596 (2007). See U.S.S.G. § 5G1.2 (outlining advisory rules for

concurrent and consecutive sentences). The district court in this case erroneously applied the § 2K2.1(b)(4) stolen weapons enhancement, which entitles Podhorn to a remand for resentencing.

Podhorn's challenge to the application of the "special skill" enhancement is not so persuasive. The provision reads, in relevant part, as follows: "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." U.S.S.G. § 3B1.3. The PSR recommended application of this enhancement based on Podhorn's violation of the terms of his Federal Firearms License. We therefore do not find useful the nonprecedential disposition from the Tenth Circuit to which he referred, *United States v. Hinshaw*, No. 98-3165, 1999 U.S. App. LEXIS 378, at *13 (10th Cir. Jan. 12, 1999), because it addressed only the special skill portion of § 3B1.3 and explicitly declined to address the "abuse of trust" portion. *Id.* at *8-9.

Podhorn argues nevertheless that the jury instructions in his case were flawed in that they referred disjunctively to a position of trust or a special skill, and it was impossible to tell from the jury's special verdict which of these two possible findings the jury made. Whether either of these grounds for enhancement is satisfied is a question of fact, and so Podhorn is really arguing that there was insufficient evidence to support a finding of special skill. As this court has said before,

> It is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous

> view of the law; it is another to do so merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.

*Griffin v. United States*, 502 U.S. 46, 59-60 (1991) (quoting *United States v. Townsend*, 924 F.2d 1385, 1414 (7th Cir. 1991)). The refusal to give an instruction removing an insufficiently supported theory from the jury's consideration "does not provide an independent basis for reversing an otherwise valid conviction." *Id.* at 60. In Podhorn's case, each and every charge in the second superseding indictment that invokes § 3B1.3 (Counts 3-25, 27) refers only to a position of trust and not to special skill, so there is no reason to suppose that the jury based its special verdict on the special skill component. Thus, the § 3B1.3 enhancement was properly applied.

*   *   *

For these reasons, we AFFIRM the court's judgment of conviction, but we VACATE the sentence and REMAND for resentencing in accordance with this opinion.

RIPPLE, *Circuit Judge*, concurring in part and dissenting in part. I join my colleagues in affirming the judgment of the district court with respect to all issues except those addressed in part V of the opinion, which considers Mr. Podhorn's challenges to two aspects of his sentence. I believe that the sentencing enhancement under U.S.S.G. § 2K2.1(b)(4), based on the fact that two of the firearms were stolen, was applied properly to Mr. Podhorn. Additionally, I write separately to emphasize that this circuit never has held that the sentencing enhancement under U.S.S.G. § 3B1.3, for abusing a position of trust or using a special skill, may be applied on the ground that the defendant was the holder of a federal firearms license ("FFL"); indeed, there is reason to believe it may not be so applied. Therefore, I respectfully dissent.

## I

The majority's thoughtful and comprehensive opinion sets forth the facts of this case in detail; I shall not belabor them here. Section 2K2.1(b)(4) provides that, in calculating the offense level, "[i]f any firearm (A) was stolen, increase by 2 levels; or (B) had an altered or obliterated serial number, increase by 4 levels." The application note qualifies that rule, stating:

> If the only offense to which § 2K2.1 applies is 18 U.S.C. § 922(i), (j), or (u), or 18 U.S.C. § 924(l) or (m) (offenses involving a stolen firearm or stolen ammunition) and the base offense level is determined under subsection (a)(7), do not apply the enhancement in subsection (b)(4)(A). This is because the base offense level takes

into account that the firearm or ammunition was stolen. . . .

U.S.S.G. § 2K2.1 app. n.8(A) (2004).

Mr. Podhorn was charged with offenses under section 922(j), an offense which takes into account that the firearm was stolen. *Id.* Additionally, his "base offense level [was] determined under subsection (a)(7)." *Id.* Thus, if section 922(j) were "the only offense to which § 2K2.1 applie[d]," the application of the section 2K2.1 enhancement would be improper. *See id.*

Here, however, section 2K2.1 also applies to two counts of conviction for failure to keep records in violation of 18 U.S.C. § 922(b)(5); the application therefore was proper. *See id.* The PSR, which was adopted by the district court, found that two weapons—Hess Arms Model 47 rifles bearing serial numbers 991068107 and 991067293—were stolen. This finding was supported by the jury's special verdict in Counts 3 and 4, which found that Mr. Podhorn had disposed of those weapons knowing them to have been stolen. *See* Tr. Vol. 18 at 142-43. Counts 3 and 4 alleged violations of section 922(j), and, as discussed above, if these offenses were the only ones to which the enhancement could be applied, its application would be improper. Those same firearms were involved as well, however, in Counts 5 and 6. *Id.* at 217-20 (second superceding indictment). Counts 5 and 6 alleged violations of 18 U.S.C. § 922(b)(5), failure to keep records required to be kept by 18 U.S.C. § 923. Violations of section 922(b)(5) are not within the limitation expressed in section 2K2.1(b)(4) that prohibits application of the stolen weapon enhance-

ment; that is, the enhancement in section 2K2.1 may be applied to violations of the record-keeping requirement. Because section 2K2.1(b)(4) may be applied to those offenses, it may be applied to Mr. Podhorn. *See* U.S.S.G. § 2K2.1 app. n.8(A) ("If the *only* offense to which § 2K2.1 applies is 18 U.S.C. § 922(i), (j), or (u) . . . do not apply the adjustment in subsection (b)(4)." (emphasis added)). Here, where the section 2K2.1 enhancement could be applied properly to Counts 5 and 6, the district court did not err in applying it to Mr. Podhorn.[1]

## II

I also write separately in order to address the application of U.S.S.G. § 3B1.3, a sentencing enhancement for abusing a position of trust or using a special skill. I concur with the

---

[1] There is no double counting here. Indeed, the majority's view gives the defendant a free ride with respect to the fact that the weapons were stolen. Given the grouping rules governing these counts, Counts 3 and 4 add no additional punishment to the defendant's sentence. More fundamentally, the majority's analysis fails to recognize the substantial and salutary public policy of distinguishing, for purposes of punishment, between failing to keep accurate records and failing to keep accurate records *for stolen weapons*. This is a far cry from the double punishment meted out in *United States v. Jackson*, 103 F.3d 561, 569 (7th Cir. 1996), on which my colleagues rely, for committing a drug offense with a firearm. Here, the defendant kept his records in such a way that he concealed the presence of the weapons in his inventory. He then sold the stolen weapons. Consequently, reliance on *Jackson* is simply misplaced.

majority opinion's holding on this issue, which affirms the district court's application of the enhancement. I do so because, on appeal, Mr. Podhorn has not contended that an FFL is not a position of either public or private trust. An argument not made on appeal is abandoned, and we need not consider it. *See United States v. Venters*, 539 F.3d 801, 809 (7th Cir. 2008); *United States v. Cochran*, 534 F.3d 631, 634 n.3 (7th Cir. 2008).

I wish to express concern, however, regarding whether section 3B1.3 may be applied merely because the holder of an FFL "violat[ed] the terms of his Federal Firearms License." *See* PSR ¶ 36. This court never has held that section 3B1.3 may be applied in this circumstance.

Section 3B1.3 states:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that signifi- cantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. . . .

U.S.S.G. § 3B1.3. The majority opinion holds, and I concur, that an FFL does not constitute a special skill under section 3B1.3. *See id.* § 3B1.3 app. n.4 ("'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licens- ing. Examples would include pilots, lawyers, doctors,

accountants, chemists, and demolition experts.").[2] In order to apply the enhancement to Mr. Podhorn, then, an FFL must qualify as a position of either public or private trust. There is reason to doubt this conclusion.

The application notes explain further what qualifies as a position of trust, stating:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this enhancement to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for

---

[2] The licensing qualifications to receive an FFL are perfunctory. One must be at least twenty-one years old; not be prohibited from transporting, shipping, or receiving firearms; not have willfully violated any federal provisions or regulations concerning firearms; not have willfully failed to disclose any material information on the application; have a location in a state from which the license business is conducted; and certify the business will be conducted pursuant to state or local law. See 18 U.S.C. § 923(d)(1)(A)-(F); *see also United States v. Hinshaw,* 166 F.3d 1222 (10th Cir. 1999) (unpublished disposition). Any application "shall be approved" if those conditions are met and the applicant pays the fee. 18 U.S.C. § 923(d)(1).

the offense more difficult). This adjustment, for exam-
ple, applies in the case of an embezzlement of a client's
funds by an attorney serving as a guardian, a bank
executive's fraudulent loan scheme, or the criminal
sexual abuse of a patient by a physician under the
guise of an examination. This adjustment does not
apply in the case of an embezzlement or theft by an
ordinary bank teller or hotel clerk because such posi-
tions are not characterized by the above-described
factors.

*Id.* app. n.1.[3]

As a general matter, we have held that the application of
section 3B1.3 is appropriate only if the victim puts the
offender in a position characterized by professional or
managerial discretion—that is, a position with the type of
substantial discretionary judgment that is ordinarily given
considerable deference—and that discretion then signifi-
cantly facilitates the execution and detection of the crime.
*United States v. Hathcoat*, 30 F.3d 913, 919 (7th Cir. 1994). We
must analyze the situation from the perspective of the
victim—the person or entity who trusted the offender with
discretion. *Id.*; *see United States v. Ellis*, 440 F.3d 434, 437
(7th Cir. 2006). The focus is not on formal labels; instead,
we "look to the relationship between the defendant and the
victim and the *level of responsibility* the defendant was
given." *United States v. Snook*, 366 F.3d 439, 445 (7th Cir.
2004) (emphasis added).

---

[3]   Application Note 2 provides certain exceptions from the
qualification in Application Note 1, none of which apply here.

To date, no court has held that an FFL itself creates a position of trust. This may be because it is difficult to determine from its face how an FFL bestows on its holder the type of substantial discretion and responsibility necessary to apply section 3B1.3. *See* 18 U.S.C. §§ 923 & 924 (describing the qualifications for and requirements placed on FFL holders). If the FFL itself forms the basis of the position of trust, then the victim, whose perspective we must consider, is the Government.[4] *See Ellis*, 440 F.3d at 437; *Snook*, 366 F.3d at 445. The Government, which is the licensing authority, provides an FFL holder with almost *no* discretion as a result of his license. An FFL holder must comply with all sales and firearms requirements of federal, state and local law. *Id.* §§ 923(d)(1)(F)(ii)(II), (e). He must maintain records of *every* disposition in any form of every firearm that he handles. *Id.* § 923(g)(1)(A). An FFL holder is subject to inspection at his licensed premises by the Secretary without reasonable cause or warrant. *Id.* §§ 923(g)(1)(B), (C). Such an inspection takes place at least once per year for the purpose of inspecting the licensee's records, and more often than that in many circumstances. An FFL holder is even limited in the form of his record keeping; the records must be maintained "for such period, and in such form, as the Secretary may by regulations prescribe." *Id.* § 923 (g)(1)(A). Additionally, he must

---

[4]   In this case, the PSR states that "[t]here are no identifiable victims of the offense." PSR ¶ 26. It states additionally that the enhancement for abuse of a position of public or private trust was proper because Mr. Podhorn "violat[ed] the terms of his Federal Firearms License." PSR ¶ 36.

prepare special reports whenever he sells any combination of two or more pistols and revolvers to unlicensed persons within a five-day period, and the report must be sent to the Secretary and a local law enforcement agency the day of the second sale. *Id.* § 923(g)(3)(A). He must report a loss or theft to the local authorities within forty-eight hours. *Id.* § 923(g)(6). He must post his license on the premises covered by the license, *id.* § 923(h), and he never may conduct business from a motorized or towed vehicle, *id.* § 923(j). In short, a person holding an FFL is *not* "subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." *See* U.S.S.G. § 3B1.3 app n.1. Thus, it is not clear, given the nature of the FFL, how an FFL could convey upon its holder the type of substantial discretionary judgment necessary to apply the enhancement. *See id.*

Indeed, in the present case, Mr. Podhorn's offenses were strikingly akin to "the case of an embezzlement or theft by an ordinary bank teller or hotel clerk"—that is, offenses that do *not* qualify as positions of trust. Like the teller who pockets a customer's deposit instead of placing it in the till, Mr. Podhorn stole firearms that had been sent to him for repair.[5] An ordinary teller has no discretion with regard to

---

[5]    I address specifically Mr. Podhorn's offenses under section 922(j) because his record-keeping offenses under section 922(b)(5) include possession of an FFL as an offense characteristic. *See* 18 U.S.C. § 922(b)(5) ("It shall be unlawful for any *licensed* importer, *licensed* manufacturer, *licensed* dealer, or *licensed* collector to sell or deliver . . . any firearm or armor-piercing

(continued...)

his dealings with the deposit; he is required by his position to place it in the till. There is no element of discretionary judgment in his position that would permit him to explain properly the absence of that deposit in his till at the end of the day. The contrast between this situation and that of another example given by the application notes—that of the criminal sexual abuse of a patient by a physician under the guise of an examination—is clear. In the latter, the physician is entrusted with significant discretion by his patient, and, *as a result of that discretion*, he has substantial opportunity to offer explanations for his criminal conduct that would make detection of the offense significantly more difficult. To give another example, the FFL license is akin to a driver's license that, although it puts one in a position legally to be on the road, does not subject one to the enhancement under section 3K1.3 if one drives while intoxicated. The FFL may offer a mere *opportunity* to commit offenses—for instance, the failure to keep the records the FFL required an FFL holder to keep—but we should take care before holding that it significantly facilitates the commission or concealment of an offense and that it also affords the kind of substantial discretion that could make more difficult the identification or detection of a licensee's offenses.

─────────────────

[5] (...continued)
ammunition to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person if the person is an individual . . . ." (emphases added). Application of section 3B1.3 to the offenses under section 922(b)(5) is therefore improper. *See* U.S.S.G. § 3B1.3.

## Conclusion

Therefore, I would affirm the judgment of the district court. For these reasons, I respectfully dissent from the portion of the panel's opinion that reverses the district court's application of the sentence enhancement in section 2K2.1(b)(4). I concur in the judgment with regard to the application of section 3B1.3, but would note considerable reservation with regard to whether the section generally should be applied to FFLs. I am pleased to join the opinion in all other respects.