In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3525

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CURTIS JOHNS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-cr-00468-1 — **Ronald A. Guzmán**, *Judge.*

ARGUED SEPTEMBER 18, 2013 — DECIDED OCTOBER 9, 2013

Before BAUER, POSNER, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Curtis Johns pleaded guilty to three counts of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). The district court imposed a 120-month concurrent sentence on each of two counts and a 40-month consecutive sentence on the third count for a total, above-guideline sentence of 160 months' imprisonment. Johns appeals his sentence, raising several issues. Because we

conclude that the district court erred by imposing a four-level "other felony offense" enhancement under U.S.S.G. § 2K2.1(b)(6)(B), we vacate the sentence and remand for resentencing.

## I. BACKGROUND

Johns was indicted with three counts of possession of a firearm as a convicted felon. Count One alleged that he possessed a .20 caliber shotgun in July 2010, Count Two alleged that he possessed a .45 caliber rifle in September 2010, and Count Three alleged that he possessed a loaded .38 caliber revolver in November 2010. Johns pleaded guilty without a plea agreement to all counts. He admitted that he sold a shotgun, rifle, and revolver to a confidential informant (CI) and admitted a factual basis for each count. In addition, Johns admitted that he knew the revolver was loaded. At his plea hearing, the parties agreed that the firearm in Count Two was a .9 millimeter rifle, not a .45 caliber rifle as alleged in the indictment. The district court accepted the guilty pleas and adjudged Johns guilty of the offenses.

A presentence investigation report (PSR) was prepared in advance of sentencing. The PSR stated that Johns and the CI were members of the Wheels of Soul Motorcycle Club (WOS); that Johns knew the CI was a convicted felon and that the CI knew Johns was on probation; and that Johns knew the CI intended to resell the guns for profit. The PSR also alleged that during the first controlled buy, Johns told the CI that he had a second gun that he intended to use in retaliation for the murder of another WOS member and that Johns could get two ounces of crack to sell to the CI in the future. According to the

PSR, the .9 millimeter rifle that Johns sold the CI had "dual capacity for fully automatic and semi-automatic" operation and had been stolen. The PSR stated that during an October 2010 recorded conversation, the CI told Johns that he was re-selling the guns he had purchased from Johns.

The PSR recommended a base offense level of twenty, *see* U.S.S.G. § 2K2.1(a)(4)(B), and four enhancements: (1) two levels because the offense involved three firearms, *see* § 2K2.1(b)(1)(A); (2) two levels because the rifle was stolen, *see* § 2K2.1(b)(4); (3) four levels because Johns engaged in the trafficking of firearms, *see* § 2K2.1(b)(5) (the "trafficking enhancement"); and (4) four levels because he transferred a firearm with knowledge that it would be used or possessed in connection with another felony offense, *see* § 2K2.1(b)(6)(B) (the "other felony offense" enhancement). The PSR did not identify the "other felony offense," but relied on the fact that "[t]he CI informed the defendant he was a convicted felon and he was going to re-sell the firearms for profit." The PSR also recommended a three-level reduction for acceptance of responsibility, *see* § 3E1.1, which resulted in a total offense level of 29. The total offense level, combined with a criminal history category of II, yielded a guidelines range of 97 to 121 months' imprisonment. The PSR indicated that "[t]he probation officer ha[d] no information … which would warrant a departure from the advisory sentencing guideline range." Among other things, the PSR also noted that Johns had "eight biological children from six relationships" and that he owed $46,189 in child support.

In his sentencing memorandum, Johns objected to the trafficking enhancement and the other felony offense enhance-

ment. He also stated that his youngest daughter was not his biological child, but his fiancée's child.

The government's sentencing memorandum first provided additional factual background for the offense conduct. It stated that in 2011, Johns discussed "the sale of crack cocaine and guns and ammunition" with Allan Hunter, "the WOS leader" who pleaded guilty to RICO conspiracy charges, and they also discussed "gang violence and seeking retaliation within the gang for violence." (Hunter was the president of the Midwest Region of WOS.) As support, the memorandum cited Exhibit A to the Government's Version of the Offense, which was attached to the PSR. Exhibit A appears to be transcripts of three recorded conversations between Johns and Hunter that occurred in January and February 2011. The memorandum then addressed the three controlled buys and with regard to the third, stated that Johns told the CI that Hunter had asked Johns for a gun and that Johns sold guns to Hunter and Hunter's brother. (Johns seems to suggest that he could not have told the CI in November 2010 that he had sold guns to Hunter because the recorded conversations did not take place until 2011. But the record does not imply that the three recorded conversations represent all of the conversations that ever occurred between Johns and Hunter.)

The government agreed with the PSR that Johns engaged in the trafficking of firearms when he sold three firearms to the CI. While Johns objected that he knew the CI was a convicted felon or intended to use or dispose of the guns in an unlawful fashion, the government responded by arguing that in a recorded conversation, Johns and the CI discussed that the CI was going to sell the firearms Johns supplied him to others for

profit, which provided evidence that Johns knew that the CI was going to illegally sell the firearms. The government also argued that the CI advised law enforcement that he had told Johns that he was a convicted felon and on probation and, therefore, Johns knew that the CI could not lawfully possess the firearm. In asserting that the other felony offense enhancement was proper, the government relied on the recorded conversation between Johns and the CI regarding the CI's intention to sell the firearms to others, including Johns's statement that he wanted a cut of the CI's profits. The government requested a within-guidelines range sentence.

At the sentencing hearing, the district court generally followed appropriate sentencing procedures except that it failed to verify that Johns and his counsel had read and discussed the PSR. The court overruled Johns's objection to the trafficking enhancement, finding that Johns "clearly knew what the informant was referring to because he said, oh, if you're going to make money off of reselling these guns, I want a piece of the action" and "knew what was happening to these weapons after he sold them." The judge also overruled the objection to the other felony offense enhancement, stating that "[i]t was the same issue, which I already ruled on." The court then adopted the PSR, specifically the total offense level of 29, the criminal history category of II, and the guideline range of 97 to 121 months.

In explaining its sentencing determination, the court found "the record establishes a very strong need in this particular case for deterrence, both in the general sense and in the specific sense." The court explained that "fully-automatic weapons, shotguns and semiautomatic handguns being sold for profit to

members of an active gang involved in violent behavior is a grave, extreme and present active danger to communities." It noted that Johns was on probation when he engaged in the offense conduct. Then the court considered the § 3553 factors, including Johns's history and characteristics, and took account of "the fact that the defendant has, if I understand it correctly, some eight children from six different relationships," remarking that "[t]his is not a picture of responsible conduct. It is a rather dark picture, frankly." The court considered Johns's age, finding it an aggravating circumstance:

> He has engaged in this conduct at an age where statistically one might expect for a person who has had a checkered background with the law to be maturing into a less active phase of criminal conduct and to be less likely to be a danger of recidivism. Unfortunately, I don't see that here. It appears the defendant has increased his conduct, the nature and the frequency of it. And, therefore, the Court feels there is a significant danger of recidivism in this particular case.

The court imposed an above-guidelines range sentence: 120 months concurrent on Counts One and Two, and 40 months consecutive on Count Three, for a total of 160 months. This is a thirty-three percent upward departure. The court explained its reasons for imposing an above-range sentence:

> It's above the range for many of the reasons I've just indicated, including the extreme danger to the community posed by the defendant's conduct; the defendant's statement that he himself

> was retaining a weapon for use in the commis-
> sion of revenge for a murder of a gang member;
> the fact that the defendant knew that the guns
> were being given to people who were not enti-
> tled to them and were being resold at a profit;
> the violent nature of the people to whom he sold
> these guns and the activities that they were
> involved in, which posed extreme dangers to the
> communities; and the need to protect the public
> from all of these factors, including the likelihood
> that the defendant will repeat this type of con-
> duct when given the opportunity.

The prosecutor asked the court whether it would impose the same sentence assuming that the enhancements that were discussed had not applied, and the court responded that it "would impose the same sentence for the reasons stated, specifically, deterrence, danger to the public, likelihood of recidivism, which factors I think the guidelines insufficiently accounted for." The court's written statement of reasons for the sentence reaffirmed the stated reasons for the upward variance and also noted that Johns committed the offense after his son was shot and killed, that "[i]n his personal life, he has been irresponsible to a high degree, having fathered some eight children through six separate relationships" and that Johns owed thousands of dollars in child support.

## II. DISCUSSION

Johns challenges the application of the four-level "other felony offense" enhancement under U.S.S.G. § 2K2.1(b)(6)(B). Alternatively, he maintains that the district court's findings in

support of the other felony offense enhancement were insufficient. U.S.S.G. § 2K2.1(b)(6)(B) provides: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels." However, Application Note 13(D) to § 2K2.1 provides:

> In a case in which three or more firearms were both possessed and trafficked, apply both subsections (b)(1) and (b)(5). If the defendant used or transferred one of such firearms in connection with another felony offense (*i.e.*, *an offense other than a firearms possession or trafficking offense*) an enhancement under subsection (b)(6)(B) also would apply.

(emphasis added).

We have held in that "double counting is generally permissible unless the text of the guidelines expressly prohibits it." *United States v. Vizcarra*, 668 F.3d 516, 519 (7th Cir. 2012). ("'[D]ouble counting' refers to using the same conduct more than once to increase a defendant's guidelines sentencing range.") The district court applied both the trafficking enhancement and the other felony offense enhancement based on the same conduct—Johns's transfer of the firearms to the CI with knowledge that the CI was going to resell the firearms. This was revealed at sentencing, when the government reminded the court of Johns's objection to the other felony offense enhancement, and the court responded: "It was the same issue,

which I already ruled on," referring back to the objection to the trafficking enhancement. *Id.*

Yet the government argues that application of the other felony offense enhancement was nonetheless proper because Johns transferred the firearms to the CI in connection with felonies other than the trafficking offense, including the sale of crack cocaine and illegal gang activity. Johns may have discussed such things with the CI when he transferred the firearms, but the district court did not find that Johns transferred a firearm in connection with any such felonies and that is a factual determination "for the district court to make in the first instance." *United States v. Kimoto*, 588 F.3d 464, 496 (7th Cir. 2009).

The district court applied both the trafficking enhancement and the other felony offense enhancement based on the same conduct—Johns's transfer of the firearms to the CI with knowledge that the CI was going to resell the firearms. This double counting was impermissible because Application Note 13(D) to § 2K2.1 expressly prohibits it. Therefore, the court erred in applying the other felony offense enhancement.

The government argues that Johns forfeited this issue for appeal. In the context of sentencing objections in the district court, a defendant need not present a "fully developed or even well-articulated" objection to preserve it for appeal. *United States v. Swanson*, 692 F.3d 708, 715 (7th Cir. 2012). Johns objected to application of the other felony offense enhancement, which preserves the issue. But even if he forfeited the issue, the error is plain. The misapplication of the enhancement increased the offense level and resulted in an improper

guidelines range, which affected Johns's substantial rights. *Cf.
United States v. Tovar-Pina*, 713 F.3d 1143, 1148 (7th Cir. 2013)
(concluding that a sentence imposed based on an erroneously
calculated guidelines range is not harmless and remanding for
resentencing under the correct range).

The government argues that the district court has assured
us that it would impose the same sentence regardless of the
application of the enhancement, so the guidelines error is
harmless. *See, e.g.*, *United States v. Abbas*, 560 F.3d 660, 667 (7th
Cir. 2009). However, the court's statement that it "would
impose the same sentence for the reasons stated … " came only
on prompting by the Assistant U.S. Attorney and, more
importantly, falls short of the "detailed explanation" we have
found sufficient to show harmless error. *Id.* Instead, the court's
comment appears to have been "just a conclusory comment
tossed in for good measure." *Id.*

The district court's erroneous application of the other
felony offense enhancement requires that we vacate Johns's
sentence and remand for resentencing. We will address Johns's
other arguments as well to provide guidance to the court and
parties on remand. He argues that the district court erred in
failing to ask him whether he read and discussed the PSR with
his counsel, which violated Fed. R. Crim. P. 32(i)(1)(A). The
government concedes that the court erred, but argues that
Johns cannot show either prejudice or that this error affected
his substantial rights. We have said:

> Fed. R. Crim. P. 32 [requires] that a sentencing
> judge ask … whether the defendant had a chance
> to read the PSR [and] whether the defendant had

> a chance to discuss it with counsel … . Once the defendant does challenge any portion of the PSR, the court is bound under Fed. R. Crim. P. 32(c)(3)(D) either to make a finding or to assert that the sentence imposed did not rely on the controverted fact. Resentencing is proper when the judge failed to ask any of the questions and when the defendant identifies facts that would be disputed if defendant had been given the opportunity.

*United States v. Atkinson*, 979 F.2d 1219, 1224 (7th Cir. 1992). (The subsections have been renumbered; the reference to 32(c)(3)(D) is to what is now 32(i)(3)(B).) On remand, the district court can verify whether Johns has read the PSR and discussed it with counsel.

Johns also argues that in imposing the sentence, the district court relied on inaccurate facts about the .38 caliber revolver and the number of his biological children. "[D]ue process requires that a defendant be sentenced on accurate information." *Atkinson*, 979 F.2d at 1224. To show error requiring remand, "the defendant must show that false information was before the court and that the court relied on it in arriving at the sentence." *Id.* At sentencing, the district court referred to the .38 caliber revolver as a "semiautomatic handgun" and mentioned that Johns had eight children from six different relationships. Johns did not object to the court's characterization of the revolver, but the judge was mistaken. Johns did not correct the court's statement about the number of children. However, whether he fathered eight or seven children is disputed; the court should have resolved this dispute or

asserted that the sentence imposed did not rely on this disputed fact.

The government argues the district court did not base its sentence "in any material way" on these erroneous facts. However, at resentencing, the parties can alert the district court to its misunderstanding about the revolver and the court can resolve the dispute over the number of Johns's biological children, if necessary. Besides, the record suggests that the district court's erroneous view of these facts did not affect the sentence imposed. The court focused on the dangerousness of Johns's conduct and the need for deterrence. The judge seemed concerned with the seriousness of offenses—the repeated sale of firearms, including a fully automatic rifle with a large capacity magazine, for profit to members of a violent gang—and the need for specific deterrence given Johns's personal history and characteristics, including his criminal background and his commission of these offenses while on probation. In addition, the judge took account of the fact that Johns was revving up his criminal activity, both the nature and frequency, at an age when other criminals begin to slow down, which suggested "a significant danger of recidivism." *See United States v. Johnson*, 685 F.3d 660, 662 (7th Cir. 2012) ("The 70-year-old criminal is a *rara avis*, and by engaging in criminal activity at such an age provides evidence that he may be one of the few oldsters who will continue to engage in criminal activity until they drop."). It seems that the judge's mistaken reference to the revolver as a semiautomatic was inconsequential, and whether Johns has eight or only seven biological children seems inconsequential as well. Whether he has seven or eight biological children, he owes a large amount of unpaid

child support, which the district court expressly relied on as a basis for the sentence imposed. The issue is not the right to father children, but whether Johns's behavior in fathering multiple children whom he can't (or won't) support justifies a heavier sentence.

Finally, Johns contends that the district court's explanation for the 160-month sentence was insufficient to support its significant upward departure from the guideline range. (He has waived any argument about lack of notice of departure as required under Fed. R. Crim. P. 32(h).) "[A] sentencing judge should support an above-guidelines sentence with compelling justifications." *United States v. Miller*, 601 F.3d 734, 740 (7th Cir. 2010) (quotation omitted). The judge "'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance … . [A] major departure should be supported by a more significant justification than a minor one.'" *Id.* at 739 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The judge explained that the sentence imposed was above the guideline range "for many reasons" he had just mentioned, including the "extreme danger to the community posed by [Johns's] conduct," his statement that he was intended to seek revenge for the murder of a gang member, and the need to protect the public. The judge explained that the guideline range did not sufficiently account for the need for deterrence, the danger to the public, and the likelihood of recidivism in the case. These could be permissible reasons for an upward adjustment. *See* 18 U.S.C. § 3553(b)(1).

However, given our determination that the district court erred in applying the other felony offense enhancement, the total offense level was four levels too high and the guidelines

range should have been lower than the range recommended by the PSR. (We do not foreclose the possibility that on remand the district court could apply the enhancement upon an appropriate finding that Johns possessed or transferred the firearms in connection with a felony other than firearms trafficking.) Regardless of whether the judge gave a sufficient explanation for a thirty percent increase above the top of a recommended guidelines range of 97 to 121 months, a more substantial departure from a lower guidelines range on resentencing should be supported by a more significant justification. Without the four level other felony offense enhancement, Johns's total offense level would be 25, and when combined with his criminal history category of II, would yield a guideline range of 63 to 78 months' imprisonment. We leave the determination of total offense level and guideline range as well as the appropriate sentence relative to the correct guideline range to the district court in the first instance.

## III. CONCLUSION

For the foregoing reasons, Johns's sentence is VACATED and REMANDED for resentencing consistent with this opinion.