In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3810

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ELSTON A. HENRY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 12 CR 50066-1— **Philip G. Reinhard**, *Judge.*

ARGUED JANUARY 26, 2016— DECIDED FEBRUARY 17, 2016

Before WOOD, *Chief Judge*, and BAUER and POSNER, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant pleaded guilty to conspiracy to possess an illegal drug intending to distribute it, see 21 U.S.C. §§ 846, 841, and to possession of a firearm for use in his drug trafficking, 18 U.S.C. § 924(c)(1)(A)(i). He was sentenced to 152 months in prison. His only colorable chal-

lenges on appeal are to the length of the prison term and the duration and conditions of supervised release that the district judge imposed.

As part of his drug activity the defendant had recruited a man named Arsenio Purifoy to sell heroin for him. He supplied the heroin to Purifoy with instructions to charge $100 per gram and return $80 to him; the $20 retained by Purifoy was compensation for making the sale. (The record is silent on the cost to the defendant of the heroin he bought for Purifoy to resell.) The judge increased the defendant's guidelines range by two levels on the ground that he was Purifoy's "manager, or supervisor," of their joint drug activity. U.S.S.G. § 3B1.1(c).

Application Note 4 to guideline 3B1.1 lists "exercise of decision making authority," "recruitment of accomplices," "the claimed right to a larger share of the fruits of the crime," and "the degree of participation in planning or organizing the offense," as being among the factors that a judge should consider in deciding whether to impose the two-level enhancement. All are present in this case. The defendant recruited Purifoy to be an accomplice, instructed him (according to Purifoy) in how to package heroin for sale, claimed—and indeed took—a much larger share (80 percent) of the revenue of Purifoy's activity than Purifoy himself (20 percent), and in these respects exercised decision-making authority over Purifoy, determined Purifoy's compensation, and was the planner and organizer of the drug activity (retail sale of heroin) that he had recruited Purifoy to conduct. He also helped pay for a gun for Purifoy to enable the latter to protect the conspirators. He even admitted having "recruited Purifoy to sell heroin for" *him* (that is, for the de-

fendant). And finally Purifoy lived in the defendant's home—where the defendant could keep an eye on him and kick him out or worse if he didn't toe the line.

If you recruit a person, tell him what his job is, specify his wage, and equip him with tools of his trade (the gun in this case), you're his manager. Recruitment as a factor supporting an inference of management is emphasized in *United States v. Mendoza*, 576 F.3d 711, 717 (7th Cir. 2009), a case similar to this one.

It's true that there is no evidence of close, day by day supervision of Purifoy's retail sales activity by the defendant. But an employee doesn't cease to be an employee merely because he's on a long leash. The judges of this court have been "recruited" by the federal government, which is in a broad sense the "organizer" of our activity, but there is no day to day supervision. The fact that Purifoy sold just heroin, though the enterprise sold other illegal drugs as well, is also irrelevant, for different employees often perform different tasks for their employer. The two-level enhancement was proper.

Regarding supervised release, however, the government concedes that the district judge erred and recommends that the judgment be vacated and the case remanded for full resentencing. The recommendation is consistent with the principle that because imprisonment and supervised release are to a degree substitutes—supervised release like prison imposes restrictions on the defendant's freedom, albeit less stringent ones—a change either in the prison sentence or in the supervised-release sentence may warrant a change in the other sentence in order to produce an optimal mixture of

tight and loose restrictions. E.g., *United States v. Downs*, 784 F.3d 1180, 1182 (7th Cir. 2015).

The government is right to concede sentencing error in regard to supervised release. The district judge had failed to make the findings required by 18 U.S.C. §§ 3553(a) and 3583(d) to justify the length of a term of supervised release and the particular conditions (other than those required by statute) that he imposed. He also failed to state at sentencing the conditions that he was imposing. See 18 U.S.C. § 3583(c); *United States v. Kappes*, 782 F.3d 828, 845, 862 (7th Cir. 2015); *United States v. Thompson*, 777 F.3d 368, 373 (7th Cir. 2015).

And a number of the conditions that he imposed have been criticized by this court on a variety of grounds not addressed by the district judge. See, e.g., *United States v. Poulin*, 809 F.3d 924, 931–34 (7th Cir. 2016); *United States v. Kappes*, *supra*, 782 F.3d at 848–51. For example, he did not explain why he was requiring the defendant, as one of the conditions of supervised release, to "permit a probation officer to visit him or her at any time at home or elsewhere and … permit confiscation of any contraband observed in plain view of the probation officer." The imposition of this condition without an explanation for its need in the particular case has drawn repeated criticism from this court. See, e.g., *United States v. Kappes*, *supra*, 782 F.3d at 850–51; *United States v. Thompson*, *supra*, 777 F.3d at 379–80; *United States v. Poulin*, *supra*, 809 F.3d at 934. There are two problems with the condition. The first is "or elsewhere." There is no problem with the probation officer and the defendant *agreeing* to meet outside the defendant's home, but it is unclear why the probation officer should be allowed to pick a location that may be inconvenient for the defendant. Replacing "elsewhere" with

"at some other mutually convenient location designated by the probation officer" would solve this problem. Another solution is found in *United States v. Armour*, 804 F.3d 859, 864, 870 (7th Cir. 2015)—"You shall permit a probation officer to visit you at home or any other *reasonable* location between the hours of 6:00 AM and 11:00 PM, unless investigating a violation or in case of emergency" (emphasis added). Omitting such a qualification (as the judge did in this case) leaves open at least the theoretical possibility that the probation officer could require the defendant to meet him in an inappropriate location, such as a funeral, or in a remote one, say a place many miles away.

The significance of a requirement of reasonableness is underscored by the remark in *Armour* that the defendant "argues that the term 'or other reasonable location' is vague and may subject Armour to searches at a church, hospital, or funeral home. However, under most circumstances, those visits would be unreasonable *and thus barred by the condition itself*. Therefore, imposing this condition was not an abuse of discretion." 804 F.3d at 870 (emphasis added).

There is also a question of what the probation officer would hope to learn from home visits that he would not learn from the defendant's required visits to the probation office. A defendant who has contraband in his home is unlikely to leave it in the "plain view" of the visiting probation officer. But in any event the home-visit condition is not mandatory, and being optional can be modified by the district judge to fit the particulars of the case.

Enough said. The judgment is vacated and the case remanded for a full resentencing.